<hr/>

[No. 11604. Department Two. April 28, 1914.]

*In the Matter of the Estate of* ANNIE BECK.[1]

WILLS—CONTEST—CAPACITY—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY. In a will contest, it sufficiently appears that the testatrix did not know the contents of the will, where it was shown that she did not speak or understand the English language, that the will was prepared by an attorney and read over to the testatrix in English, and when asked if she understood it, she answered "yes" as she did to several other questions, and the will was not explained to her in her native tongue; and such facts are sufficient to make a *prima facie* case that it was not her will.

SAME—CONTEST—UNDUE INFLUENCE—ADMISSIBILITY. In a will contest on the ground that the testatrix did not understand the will, and of undue influence on the part of the two principal beneficiaries, it is error to exclude evidence that the attorney drafted the will solely from information furnished by the beneficiaries, it having been shown that the testatrix did not understand enough of the English language to comprehend the terms of the will, which was read to her in the English language.

WITNESSES—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT. The evidence of an attorney who drafted a will at the instance of the chief beneficiaries, is not inadmissible as a privileged communication, in a will contest in which undue influence by such beneficiaries is a principal issue; since in drafting the will he was acting for the testatrix.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered May 7, 1913, dismiss-

[1]Reported in 140 Pac. 340.

ing a will contest, after a trial on the merits to the court. Reversed.

*Charles R. Hill* and *Neill & Burgunder*, for appellants.
*Fred E. Helwig* and *Hanna & Hanna*, for respondents.

MOUNT, J.—This action is a contest of a will. The will was executed by Annie Beck, deceased, and was admitted to probate by the superior court of Whitman county on March 1, 1912. Thereafter, in September, 1912, the contestants filed a petition contesting the will of the deceased upon the following grounds: Undue influence upon the testatrix by John F. Beck and Joseph W. Beck, sons of the deceased, and the principal beneficiaries under the will; that the will was not executed as required by law; that the testatrix at the time of executing the will did not have sufficient mental capacity to execute the same; that she did not know, and did not understand, the contents of the instrument; that the will was written in the English language, which the testatrix could not speak or understand; that the will was not translated to her; that she did not sign the will or request any one to sign it for her; and that it was not her will. Issues were made up upon these questions and the case was tried to the court without a jury. After the evidence offered on behalf of the contestants was before the court, the court dismissed the action. This appeal followed.

It was clearly shown by the evidence of the contestants that the testatrix, at the time she made the will, was 73 years of age; that she had lived in the vicinity where the will was made for a long period of years; that she did not understand or speak the English language, her native tongue being Bohemian; and that she could not carry on a conversation either in German or English.

The will was prepared by one Helwig, an attorney, and was executed by the testatrix in the presence of two witnesses. She was not able to write her name, but signed the will by,

making a cross. The will was read to her in English by one of the attesting witnesses and, when asked if she understood it, she said, "Yes." She was asked several questions and to each she simply answered, "Yes." She may or may not have understood the questions, but it is apparent from the evidence which is brought here that she did not understand the English language, and certainly did not understand the will when it was read to her. If the will was not explained to her in her native tongue, she clearly did not know the contents of it.

The principal contention of the contestants upon the trial was that the will was not the will of the testatrix, because she did not understand the English language, and did not understand what was being said when the will was being read to her. During the trial, one Helwig, the attorney who drew the will, was upon the witness stand, and was asked the question: "Q. At whose request did you draft it?" This question was objected to upon the grounds that it was immaterial and irrelevant, and not responsive to any issue in the action, and that it was privileged. The court sustained the objection upon the ground that the testimony was immaterial. The contestants then offered to prove that the witness "was employed by and was requested by John and Joe Beck, the principal beneficiaries of the instrument admitted in this court as the last will of Annie Beck, deceased, and that they gave him the information from which the will was drawn by him, and that all the information that he had was derived from one or the other or both of those parties, and from no other source." This offer was objected to and the objection was sustained. We think the court erred in rejecting this evidence. As above stated, the principal points relied upon by the contestants were that the deceased, at the time the will was executed by her, did not understand it, and upon the ground of undue influence exercised by these two beneficiaries upon the testatrix. The fact that these two beneficiaries procured an attorney to draw the will, if it be a fact, was ma-

terial upon both questions, first, as to whether the testatrix understood the will, and second, upon the question of undue influence. In 1 Underhill, Law of Wills, § 137, it is said:

"The fact that the person who drew a will for the testator, or who was active in procuring and superintending its execution, is named as beneficiary in it, was sufficient to make the instrument invalid at the Roman civil law. But the common law does not go to such an extreme as this. . . .

"Many cases seem to hold that the circumstance that a party draws a will, or actively superintends its execution, under which he takes a legacy, alone and without positive proof of the active procurement of the benefit, raises a presumption of undue influence exerted by him which must be rebutted by clear and satisfactory evidence. . . .

"The fact that the party superintending the execution of the will, or the person who propounds it for probate, takes a large benefit under it, is a circumstance raising a suspicion of undue influence. It must then be shown to the satisfaction of the court that the testator did in fact know and approve of the contents of the will. Upon this point the evidence must be clear, affirmative and conclusive. . . .

"But the safer and more correct statement of the rule is that such a condition of affairs creates no presumption, but merely raises a suspicion which ought to appeal to the vigilance of the court. Such wills are certainly not looked upon with favor. The court will cautiously and carefully examine into the circumstances which were attendant upon their execution, and will scan with a scrutinizing eye the evidence offered to procure their probate. No presumption of undue influence invariably arises from the fact that a will is drawn by a beneficiary under it, which is sufficient to cast the burden of showing the absence of influence upon the proponent. It is a fact to be considered with other facts. It is undoubtedly a suspicious fact, but its weight depends, not solely upon its character, but upon the facts and circumstances with which it is connected. In some cases it would have no weight at all. Thus, if it appear that the testator had testamentary capacity, that he dictated his will and knew its contents at the date of its execution, and that it was executed in the statutory manner, the mere fact that the will was written by the sole beneficiary would not be enough, unless coupled

with other extremely suspicious facts, to overthrow it, or, taken alone, to cast the slightest suspicion upon it."

And in Rood on Wills, § 190, it is said:

"Undue influence is not to be inferred from the scrivener being procured by the principal legatee though the testator lived with him and was old and sick. If the testator was well and strong there arises no presumption of undue influence or fraud from the fact that the person who drew it up was favored by it. But if the testator was weak and the scrivener benefited, slight circumstances in addition may suffice to cast the burden upon him to show that there was no fraud practiced and no undue influence exercised."

In this case, it was shown conclusively, we think, that the testatrix did not understand the English language sufficiently to carry on an ordinary conversation, and it is clearly shown that she did not understand enough of the English language to comprehend the terms of the will which was read to her in the English language. It seems plain, therefore, that if it can be shown that the will was procured by the principal beneficiaries, who stated to the scrivener the terms of the will, and it was then drawn according to their dictation and not according to the dictation or desires of the testatrix and it was not fully explained to her, or that she did not understand it as it was read to her in English, this would be sufficient to set the will aside. We are satisfied, therefore, that the court should have allowed the fullest investigation into the facts surrounding the drafting of the instrument, and if they were unexplained and not shown to have been thoroughly understood by the testatrix, the will was clearly not her will.

We think there is no merit in the contention that the communication was privileged. If the will was drawn by an attorney who was employed by the principal beneficiaries, the communications made by such attorney to the beneficiaries, or by the beneficiaries to the attorney, cannot, we think, be reasonably interpreted as privileged, because in drafting the will he was acting for the testatrix.

The facts shown, namely, that the testatrix did not under-
stand the English language, in which the will was written,
and that the will was read to her in English and not explained
to her so that she could understand its terms, were sufficient
we think to make a *prima facie* case that it was not her will.
We are of the opinion, therefore, that the court erred in re-
fusing to receive the evidence offered; and also in concluding
that a *prima facie* case had not been made.

The judgment is therefore reversed, and the cause remanded
for further proceedings.

Crow, C. J., Parker, Fullerton, and Morris, JJ., con-
cur.