[No. 30677. Department Two. December 30, 1948.]

*In the Matter of the Estate of* MYRA J. TATE, *Deceased.*
NUNA C. BOLLER *et al., as Executrix and Executors,*
*Appellants,* v. BESSIE BANKS *et al., Respondents.*[1]

*F. L. Stotler,* for appellants.

*Robertson & Smith* and *G. Kent Burson,* for respondent Bessie Banks.

*S. R. Clegg, Cameron Sherwood,* and *Herman H. Hahner,* for respondent Marjorie E. Tate.

MALLERY, C. J.—This is an appeal from the judgment of the trial court in a case contesting a will which the court held had been executed by the testatrix under undue influence.

[1]Reported in 201 P. (2d) 182.

The community of John E. Tate and Myra Tate had acquired property consisting chiefly of wheat lands. A private corporation had been formed to hold and operate the property. John E. Tate had held eighty-four shares of stock, and Myra J. Tate had held eighty-three shares of stock. Each of their six children was the owner of one share. After the death of John E. Tate, the family continued to manage the corporation, and the bulk of the estate of Myra J. Tate, the testatrix, consists of her 122 shares of stock.

The corporation had loaned money to a son, W. Price Tate, and a daughter, Bessie Banks. An attorney was retained to attempt to collect the indebtedness of W. Price Tate on behalf of the corporation. This resulted in animosity between the children, but it did not affect the mother's feelings for any of them. Myra J. Tate lived with her daughter Mrs. Boller for more than twenty years prior to her death at the age of eighty-three. The wheat land of the corporation was farmed by John J. Tate. John J. Tate, Lee Tate, and their sister Mrs. Boller constitute one faction of the heirs. The others could visit their mother in the home of Mrs. Boller, but by sufferance only.

Sometime prior to January 31, 1942, Lee Tate, John J. Tate, and Mrs. Boller met and drove together to the city of Spokane, where they secured the services of a lawyer to draw a will for execution by Mrs. Tate. Myra Tate did not accompany them on the trip, although she was able to drive to Spokane at a later date. The Spokane attorney was handed a former will of Myra J. Tate with handwritten notes on the margin thereof. This instrument was not produced, and it was not established who had written the marginal notes. The attorney, after discussing the matter of the will at some length, prepared an instrument and mailed it to Myra Tate. On January 31, 1942, John J. Tate and Mrs. Boller took Myra J. Tate to the bank at Palouse, Washington, where she signed the will. The execution of the will and its terms were not made known to the other heirs, and by its terms it left twenty-five dollars to each of the

other three.  Myra J. Tate died about two years later. After the will was probated and became known, this action was commenced.

The testimony of disinterested witnesses, which the court believed, attributed to Mrs. Tate statements that she had been forced to make the will and was very much distressed about it; that she wanted peace at any price, and that they had nearly driven her crazy in insisting that she change her will.  She also expressed the desire to divide the estate equally among the children.  Her nurse talked to John J. Tate about his mother's wishes in the matter.  He said that the will was the way they wanted it and there would be no changes.

■ The appellants, who are executrix and executors of the will, contend that the court erred in excluding testimony offered by themselves as to conversations with the testatrix.  The admissibility of such evidence under Rem. Rev. Stat., § 1211 [P.P.C. § 38-3] was, perhaps, in some doubt prior to the case of *In re Wind's Estate*, 27 Wn. (2d) 421, 178 P. (2d) 731.  The rule of that case makes it inadmissible.  The test of the competency of a witness to testify as to conversations and transactions had with the deceased in a will contest case is whether he would gain or lose by a decree sustaining or revoking a will already admitted to probate.  Their interest is apparent.  The evidence was inadmissible even though they were in court in a representative capacity.

■ The appellants pressed upon this court the proposition that the case is triable here *de novo*, stating: "The only issue is whether the will in question is that of Mrs. Tate or of the appellants."  In *Dean v. Jordan*, 194 Wash. 661, 79 P. (2d) 331, we said:

"The most important of such facts are (1) that the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate.  Added to these may be other considerations, such as the age or condition of health and mental

vigor of the testator, the nature or degree of relationship between the testator and the beneficiary, the opportunity for exerting an undue influence, and the naturalness or unnaturalness of the will."

See, also, *Foster v. Brady,* 198 Wash. 13, 86 P. (2d) 760; *In re Schafer's Estate,* 8 Wn. (2d) 517, 113 P. (2d) 41; and *In re Jaaska's Estate,* 27 Wn. (2d) 433, 446-7, 178 P. (2d) 321.

We think the record does not show any dispute as to points 2 and 3 as stated above.

As to point one, the appellants were in a dominant position which they used to their advantage. The trial court believed that the will was that of the appellants and not that of the deceased. We agree.

The judgment is affirmed.

SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.

ROBINSON, J. (dissenting)—I do not agree with a number of the things which are said in the foregoing opinion and therefore register my dissent therefrom.

---

February 7, 1949. Petition for rehearing denied.