[No. 35125. Department One. December 31, 1959.]

*In the Matter of the Estate of* NOEMZAR GANJIAN, *Deceased.*
JOHN O. GANJIAN, *Appellant,* v. LILLIAN GREGORY,
*Individually and as Executrix, et al., Respondents*[1]

*J. M. Jonsson* and *B. R. Agor,* for appellant.

*Dore, Cummings, Dubuar & Dore* and *James D. Dubuar,*
for respondents.

MALLERY, J.—On September 26, 1953, Noemzar Ganjian executed a will in which she left her estate to her husband or, on his prior death, to be divided equally among two sons, a daughter, and a granddaughter. This will was admitted to probate, and the granddaughter qualified as executrix. Subsequently, John O. Ganjian, one of the decedent's two sons, produced a paper purporting to be a later will, hereafter referred to as the 1958 will, and asked that it be substituted for the 1953 will. The 1958 will, after making small bequests to the other children and the granddaughter, left the bulk of the estate to John.

[1]Reported in 347 P. (2d) 891.

The trial court denied the requested substitution of the 1958 will upon the ground that it was not her will. John O. Ganjian appeals.

The 1958 will was signed on July 19th. Mrs. Ganjian was then over seventy years of age and suffering from chronic lymphatic leukemia. She had been admitted to the hospital the day before. On the day in question, she was under heavy medication, and was receiving intravenous glucose injections. Her other children and granddaughter testified that she was in a partial coma and not able to comprehend her surroundings during most of the day. She had grown up in Armenia and still spoke Armenian within the family group. She was unable to read the 1958 will on the day it was signed. Moreover, it was never read to her verbatim, but John and his attorney paraphrased it for her in general terms. There were two clauses in it about which she concededly was never informed. The first conditioned a gift to her daughter-in-law upon her being married to John, and the second named his attorney as attorney for the estate. John, who spoke Armenian, excluded everyone else who understood it from the room when the 1958 will was being discussed with her. She was too weak to sign her name and merely put her "X" upon the three pages of the 1958 will. The two witnesses to the 1958 will were a minister, whose church received a bequest of one thousand dollars, which was not in the 1953 will, and the attorney who had been named as attorney for the estate.

The record shows a long history of intention on the part of Mrs. Ganjian to divide her property equally among her children and granddaughter. Her feelings toward all were equal and there was no showing of partiality toward John or any of the others. There is no evidence indicating a subsequent change of this feeling.

The appellant first objects to the trial court's finding that his mother possessed "limited" testamentary capacity. We think, however, that, where the issue is whether or not the 1958 will was in fact her will, the extent of her testamentary capacity is not the determinative factor.

The appellant contends that only the two clauses

which were not mentioned to his mother, rather than the whole will, should be declared invalid. This is put upon the doctrine of partial invalidity. The doctrine of partial invalidity has much to commend it when applied, in proper cases, to clauses in a will which cannot be enforced for various reasons, such as illegal bequests, bequests against public policy, and gifts of objects no longer owned by a decedent. It does not, however, justify an effort to segregate and save every clause to which specific objections are not raised where the will was prepared in its entirety by another without instructions from the decedent.

The remaining question raised by appellant relates to what effect a combination of undue influence factors and impaired testamentary capacity has upon the validity of a will. In *Dean v. Jordan,* 194 Wash. 661, 79 P. (2d) 331, we said:

"Nevertheless certain facts and circumstances bearing upon the execution of a will may be of such nature and force as to raise a suspicion, varying in its strength, against the validity of the testamentary instrument. The most important of such facts are (1) that the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate. Added to these may be other considerations, such as the age or condition of health and mental vigor of the testator, the nature or degree of relationship between the testator and the beneficiary, the opportunity for exerting an undue influence, and the naturalness or unnaturalness of the will. The weight of any of such facts will, of course, vary according to the circumstances of the particular case. . . .

"The combination of facts shown by the evidence in a particular case may be of such suspicious nature as to raise a presumption of fraud or undue influence and, in the absence of rebuttal evidence, may even be sufficient to overthrow the will. *In re Beck's Estate,* 79 Wash. 331, 140 Pac. 340."

The instant case and the *Dean* case are very similar. Specifically, the following factors in this case are found in the *Dean* case. (1) The principal beneficiary of the will

was the son of the testatrix, and he was always close to her during her last days. (2) The son's lawyer was the scrivener, and the son took the lead in presenting the 1958 will to her and getting her to sign it. (3) The son received a larger share of the estate than the other survivors, notwithstanding that the decedent had equal feelings toward all her children and her granddaughter and had previously provided for them equally. Her age, state of health, and her son's opportunity to exert undue pressure on her present facts similar to those that were held to be relevant in the *Dean* case.

■ When the facts, as here, are of such a suspicious nature, the burden of proof, ordinarily upon the *opponent* of a will, is shifted to the *proponent*. The burden of showing that the 1958 will was, in fact, the last will and testament of Mrs. Ganjian was not met.

The judgment is affirmed.

WEAVER, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.