IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VERONICA RIVERA, | ) | No. 35094-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO SANCHEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Alberto Sanchez appeals from a domestic violence protection order entered against him in favor of Veronica Rivera, a distant cousin of his. Concluding that Ms. Rivera did not establish that there was a "blood" relationship between the two of them because she did not establish their common ancestor, we reverse.

FACTS

Ms. Rivera filed a petition for a domestic violence order for protection in the Yakima County Superior Court against Alberto Sanchez, a man she called "uncle." Mr. Sanchez had lent her money in the past and was seeking repayment. She alleged that he threatened her and her children.

The matter proceeded to hearing with Ms. Rivera representing herself and Mr. Sanchez being represented by counsel. Since the parties had never lived together and

were not closely related, counsel challenged whether the domestic violence order was the correct method of proceeding. Concluding that any type of blood relationship qualified, the trial court asked Ms. Rivera to explain her relationship to Mr. Sanchez. Speaking through an interpreter, she replied: "My father says that he is a son of a first cousin of my father's mother." Report of Proceedings (RP) at 11. When asked by the court about the existence of a blood relationship, Mr. Sanchez indicated that he was not sure if they were related, but agreed that it was "possibly, yes." *Id.*

The trial court found that a blood relationship existed and issued a one-year protection order. Mr. Sanchez timely appealed to this court. Ms. Rivera did not file a brief or otherwise participate in this appeal. A panel considered the matter without argument.

## ANALYSIS

The sole issue[1] we address is whether Ms. Rivera established that a blood relationship existed between herself and Mr. Sanchez. Although we agree with the trial court that any amount of a blood relationship satisfies the statute, we disagree whether Ms. Rivera proved the existence of a blood relationship. Accordingly, we reverse.

---

[1] In light of our disposition, we need not reach Mr. Sanchez's claim that the manner in which the hearing was conducted violated his due process rights.

Ms. Rivera sought protection under RCW 26.50.030, the domestic violence protection order statute. A protection order can issue due to instances of domestic violence involving people who are "family or household members." RCW 26.50.010(3). In turn, the phrase "family or household members" is defined, in relevant part:

> "Family or household members" means spouses, domestic partners, former spouses, former domestic partners, persons who have a child in common regardless of whether they have been married or have lived together at any time, *adult persons related by blood or marriage*.

RCW 26.50.010(6) (emphasis added).

This case turns on the meaning of the italicized phrase. In dealing with matters of statutory construction, the goal of an appellate court "is to discern and implement" legislative intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). We engage in de novo review. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004). A court begins its inquiry into determination of intent by looking at the plain meaning of the statute as expressed through the words themselves. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 317, 190 P.3d 28 (2008). If the statute's meaning is plain on its face, the court applies the plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Here, the phrase "related by blood" has not been defined by the legislature.[2] This archaic[3] language has been accorded some meaning by case law in the inheritance and insurance law arenas.[4] *E.g.*, *In re Adoption of B.T.*, 150 Wn.2d 409, 419-420, 78 P.3d 634 (2003) (grandmother a blood relative); *In re Matter of Estate of Little*, 106 Wn.2d 269, 271, 721 P.2d 950 (1986) (court refers to "paternal half blood relatives" as the decedent's nephew, grandniece, and great grandniece); *In re Estate of Soderstran*, 35 Wn.2d 448, 450-451, 213 P.2d 949 (1950) ("Apparently, he had no blood relatives more nearly related than nephews and nieces."); *Thilman v. Thilman*, 30 Wn.2d 743, 764, 193 P.2d 674 (1948) (blood relatives include son and granddaughter); *Foster v. Brady*, 198 Wash. 13, 86 P.2d 760 (1939) (a half-sister is a blood relative). More commonly, discussion turns on the meaning of the word "relative." *E.g.*, *Bank of California, NA v. Turner*, 193 Wash. 270, 272, 74 P.2d 987 (1938) ("The word 'relatives' has two meanings: (1) an enlarged meaning which includes all persons who are related in any way, by consanguinity or affinity, lineal and collateral relatives; (2) a restricted meaning

---

[2] The concept of blood relationship is touched on in the prohibited marriage statute, RCW 26.04.020 (treating half blood relatives the same as whole blood), and in an intestate distribution statute, RCW 11.04.035, without being defined in either instance.

[3] Although the language is less precise and less meaningful when describing genetic relationships, the fluidity of the phrase maintains utility when "half-blood relationships" and adoptions are factored into the family line.

[4] *Black's Law Dictionary* defines "blood relative" as "Someone who shares an ancestor with another." BLACK'S LAW DICTIONARY 1480 (10th ed. 2014).

which is confined to such relatives as are heirs, under the law of succession.") (quoting *In re Bernheim's Estate*, 82 Mont. 198, 266 Pac. 378 (1928)).

Mr. Sanchez urges this court to limit the concept of blood relations to those individuals that constitute an immediate family, perhaps to the extent of sharing common grandparents such as the intestacy and prohibited marriage statutes. However, the domestic violence statute contains no such limiting language and, given the broad purpose of controlling domestic violence in all kinds of family settings, it is not appropriate to read a limitation into the law. We agree with the trial court that blood relationship means *any* relationship by blood.

Our agreement with the trial court concerning the reach of the statute, however, does not mean that we agree that Ms. Rivera established the existence of a blood relationship. She asserts that Mr. Sanchez is her father's mother's first cousin's son. Being the son of a first cousin of Ms. Rivera's paternal grandmother could make Mr. Sanchez a second cousin, once removed, of Ms. Rivera.[5] MARK REUTLINGER & WILLIAM C. OLTMAN, WASHINGTON LAW OF WILLS AND INTESTATE SUCCESSION 9 (1985). However, that relationship does not necessarily follow from the existence of the

---

[5] Second cousins share only 3.125 percent of their genetic material, while third cousins share less than 1 percent. Natalie Ram, *DNA by the Entirety*, 115 COLUM. LAW REV. 873, 901-902 (2015). Second cousins once removed fall in between those two levels.

cousin relationship because that relationship did not have to come from a grandmother's relative within the same family line.

The problem arises from Ms. Rivera's failure to identify the ancestor she supposedly has in common with Mr. Sanchez. Assuming they are related, there are two potential sources for a second cousin once removed relationship. The relationship between Rivera and Sanchez could trace back to her great-grandparents, or it could trace back to her great-great-grandparents. *Id*. For instance, Ms. Rivera's great-grandparents could be the grandparents of Mr. Sanchez. Or, her great-great-grandparents could be his great-grandparents. In either instance, the two are descended from common parents and can be categorized as blood relations.

However, when multiple half-blood relationships or marriage are factored into the equation, the common ancestry can vanish. For instance, if Ms. Rivera's grandmother's grandparents both had been married twice and her father was the only child of their marriage to each other, her grandfather's children (her aunts and uncles) by his two wives would be half-siblings. Similarly, other children of her grandmother by a different father also would be half-siblings of her aunts and uncles. However, the half-siblings through her grandmother would have no relationship to the half-siblings through her grandfather. The descendants of those relationships would all be cousins to Ms. Rivera's grandmother,

6

but the cousins descended from the stepsiblings on her grandmother's side would not be related to her cousins on her grandfather's side. More significantly, any stepsiblings of the grandmother's father's relatives would have no blood relationship to her father or to her, yet their children still would be the grandmother's first cousins.

It is therefore possible that Ms. Rivera's grandmother was not related by blood to her first cousin, Mr. Sanchez's parents. Although our dissenting colleague contends that it was within the scope of the trial judge's authority to infer a family relationship from the brief facts put before the court, we believe the better rule is to require that a petitioner identify the common ancestor in accordance with the dictionary definition of "blood relation." Domestic violence orders impose significant restrictions and potential collateral consequences on the restrained party. It is not too much to ask that the domestic relationship between the parties be established rather than speculated about, particularly, as here, where the potential blood relationship is so tenuous.

This approach does not place significant barriers before Ms. Rivera. There is at least one other statute that would have been easier for Ms. Rivera to use in this circumstance. *E.g.*, chapter 10.14 RCW (anti-harassment order for protection). Having chosen to proceed under chapter 26.50 RCW due solely to a possible distant family relationship, it became her burden to prove that relationship. That she has not done here.

No. 35094-1-III
*Rivera v. Sanchez*

Reversed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

No. 35094-1-III

LAWRENCE-BERREY, A.C.J. (dissenting) — I agree with the majority that the burden was on Veronica Rivera to identify a common blood ancestor. I also agree with the majority that Ms. Rivera identified an ancestor who was as likely as not, or 50/50, a common blood ancestor of hers and Alberto Sanchez's.

Here, the trial court found that the parties had a common blood ancestor. We review a trial court's findings for substantial evidence. *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016). "Substantial evidence" means evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding. *Id.* When the facts are in equipoise, as they are here, we must affirm. For this reason, I dissent.

Lawrence-Berrey, A.C.J.