[No. 14000-4-II.    Division Two.    May 26, 1992.]

TERRY L. CARSON, ET AL, *Appellants*, v. BETSY L. FINE, ET AL, *Respondents.*

458

*Robert C. Van Siclen* and *Smythe & Van Siclen; Kathryn A. Ellis* and *Weinstein, Hacker, Matthews & Young, P.S.,* for appellants.

*Jack G. Rosenow* and *Rosenow, Hale & Johnson,* for respondent Fine.

*Everett A. Holum* and *McCarthy, Holum, Causseaux & Rourke, Inc., P.S.,* for respondent Tacoma-Pierce County Health Department.

SEINFELD, J. — The jury returned a verdict in favor of Dr. Betsy Fine in this medical malpractice action. Carmen and Terry Carson appeal, arguing that the trial court erred in allowing one of Mrs. Carson's treating physicians to testify as an expert witness for the defense. We agree, reverse the judgment entered on the verdict, and remand for a new trial.

On August 8, 1985, Carmen Carson delivered her first child. She was attended by Dr. Fine, a family practice physician employed by the Tacoma-Pierce County Health Depart-

ment. Dr. Fine performed an episiotomy during the course of the delivery. Unfortunately, the incision developed into a fourth degree laceration, which Dr. Fine attempted, unsuccessfully, to repair.

Mrs. Carson next consulted Dr. Klatt, who diagnosed a rectovaginal fistula and advised repair surgery.[1] Dr. Klatt operated on Mrs. Carson; however, his repair also was unsuccessful.

Eventually, Mrs. Carson conferred with Dr. Kemp, who performed a third repair procedure in June of 1986. Although Carmen Carson's condition did improve after Dr. Kemp's surgery, she continued to suffer from incontinence, and, in July 1986, the Carsons commenced suit in Pierce County Superior Court against Drs. Fine and Klatt.[2]

In July of 1987, Mrs. Carson, pregnant with her second child, began seeing Dr. Duenhoelter for prenatal care. Dr. Duenhoelter was aware of Mrs. Carson's complications from the repaired fistula and, as a result of Mrs. Carson's condition, the doctor advised against a vaginal delivery. In January of 1988, Dr. Duenhoelter delivered the Carsons' second baby by caesarean section.

At trial, in April 1990, Mrs. Carson testified that she rarely leaves her home and does not work outside of the home or participate in family recreational activities because of lack of bladder and bowel control. She claimed that this situation, along with limitations on her sexual relations with her husband, has caused strain on her marriage.

In connection with her lawsuit against Drs. Fine and Klatt, in November of 1987 Mrs. Carson agreed to an order which waived the physician-patient privilege and allowed defendants to conduct ex parte interviews of her treating physicians. At the time of the order, Dr. Duenhoelter was one of Mrs. Carson's treating physicians. Counsel for the

---

[1] A fistula is an abnormal passage leading from one abscess cavity or organ to another.

[2] Dr. Klatt was dismissed from this appeal when his motion on the merits was granted by a commissioner of this court.

defense met ex parte with Dr. Duenhoelter and reviewed records of Dr. Fine's care and treatment of Mrs. Carson. When discussing Mrs. Carson's case with defense counsel, Dr. Duenhoelter expressed the opinion that all of Dr. Fine's conduct was well within the standard of care. Defendants then listed Dr. Duenhoelter as an expert witness and took a deposition in which the doctor stated his belief that Dr. Fine had not acted negligently in her treatment of Mrs. Carson.

On June 9, 1988, the Supreme Court issued its opinion in *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988). *Loudon* was filed after the meeting between Dr. Duenhoelter and counsel for the defense, but before the doctor's deposition. The *Loudon* court clarified and narrowed the rule regarding ex parte contacts, holding that a plaintiff-patient's waiver of the physician-patient privilege does not authorize ex parte communications between the defendant and the plaintiff's treating physicians. The court recognized the importance of the fiduciary relationship between doctor and patient, stating: " '[W]e find it difficult to believe that a physician can engage in an *ex parte* conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient.' " "The unique nature of the physician-patient relationship and the dangers which ex parte interviews pose justify the direct involvement of counsel in any contact between defense counsel and a plaintiff's physician." *Loudon v. Mhyre,* 110 Wn.2d at 679, 681. Basing its decision on these compelling public policy concerns, the *Loudon* court prohibited ex parte interviews of plaintiff's doctor.

In a pretrial motion the Carsons argued for the exclusion of Dr. Duenhoelter's expert testimony, contending that the physician-patient privilege and the fiduciary relationship between doctor and patient should prohibit a treating physician from testifying as an expert witness against his or her patient, and that Dr. Duenhoelter had ex parte contacts with the defense, even after the court's holding in *Loudon*. The Carsons also asked the trial court to exclude the doctor's testimony, under ER 403, as cumulative and unfairly

prejudicial.[3] The trial court denied the motion, noting only that "there is no conduct that occurred which would preclude the doctor from giving testimony in this case." Because the Carsons did not call Dr. Duenhoelter as a fact witness, he testified only for the defense. Dr. Duenhoelter did, however, clearly state that he had been one of Mrs. Carson's treating physicians. The jury found no negligence on the part of Dr. Fine.

■ The Carsons argue on appeal that the trial court should not have allowed Dr. Duenhoelter to testify for the defense. Initially, we note that a trial court has considerable discretion when ruling on the admissibility of evidence. This court will not reverse an evidentiary ruling absent a showing of a manifest abuse of that discretion. *See Brouillet v. Cowles Pub'g Co.,* 114 Wn.2d 788, 791 P.2d 526 (1990).

■ Appellate courts review alleged invasions of statutory privileges by considering and interpreting the pertinent statutory provisions. *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013, 20 L. Ed. 2d 164, 88 S. Ct. 1259 (1968). Reviewing this case under these standards, we hold that Dr. Duenhoelter's testimony violated neither the physician-patient privilege nor the *Loudon* rule against ex parte contacts. Further, the trial court did not abuse its discretion in finding that the testimony was not cumulative. Nonetheless, we reverse because the trial court failed to exercise its discretion and weigh, as it must under ER 403, the probative value of Dr. Duenhoelter's testimony against the danger of unfair prejudice.

■ Appellants first contend that the trial court erred when it did not rule that the statutory physician-patient privilege, when read with the *Loudon* court's expressed policy of protecting the fiduciary relationship between doctor and patient, prohibits a plaintiff's treating physician from

---

[3]ER 403 provides as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

testifying as an expert for the defense.[4] The physician-patient privilege itself does not bar Dr. Duenhoelter's testimony as a defense expert. RCW 5.60.060 only prohibits questioning a physician about information acquired in attending the patient, as opposed to information acquired solely through the study of medicine. Furthermore, Mrs. Carson specifically waived any privilege by filing her lawsuit and by agreeing to the order allowing defense counsel to meet with her treating physicians. *See* RCW 5.60.060(4)(b). Even when considered in conjunction with the public policy against ex parte contacts expressed in *Loudon*, the privilege does not preclude a plaintiff's treating physician from testifying as a defense expert.

Similarly, the trial court did not err when it found that the *Loudon* rule against ex parte contacts was not violated in this case. The initial meeting between the defendant and Dr. Duenhoelter took place before *Loudon* was decided. Although Dr. Duenhoelter and counsel for the defense had some additional contacts after publication of the *Loudon* decision, the record shows that the communications were limited and did not include, other than in deposition, any discussion of the doctor's care and treatment of Mrs. Carson.

■ Appellants also have failed to show that the trial court abused its discretion under ER 403 when it did not exclude Dr. Duenhoelter's testimony as "needless presentation of cumulative evidence." Defendants in this case called only one additional expert to testify as to the standard of care in performing an episiotomy and repair. We cannot say

---

[4]The physician-patient privilege, RCW 5.60.060, provides in part:

"(4) . . . a physician or surgeon . . . shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient, except as follows:

". . . .

"(b) Ninety days after filing an action for personal injuries . . . the claimant shall be deemed to waive the physician-patient privilege. Waiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions . . .."

that the trial court acted unreasonably by allowing the testimony of two experts. Furthermore, the admission of evidence which is merely cumulative is not prejudicial error. *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970).

▪ The heart of the Carsons' argument is that the probative value of Dr. Duenhoelter's testimony was "substantially outweighed by the danger of unfair prejudice" and that the court should therefore have excluded it under ER 403. Evidence is generally unfairly prejudicial if it is likely to provoke a juror's response on an improper basis — commonly, but not necessarily, an emotional basis. *See* 1 J. Weinstein & M. Berger, *Evidence* ¶ 403[03], at 403-33 (1991); 5 K. Tegland, Wash. Prac., *Evidence* § 105, at 349 (3d ed. 1989). *See also State v. Rice*, 48 Wn. App. 7, 737 P.2d 726 (1987).

▪ Although the trial court need not engage in balancing probative value as opposed to danger of unfair prejudice on the record every time a party makes an ER 403 objection, *State v. Gould*, 58 Wn. App. 175, 791 P.2d 569 (1990), without the assistance afforded by such a record, it is difficult for an appellate court to evaluate the trial court's decision. For that reason, the Supreme Court does require a trial court to articulate its balancing on the record under certain limited circumstances.

For example, the court must explain its reasons in cases involving the admission of prior convictions under ER 609. *State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984), *overruled on other grounds in State v. Brown*, 111 Wn.2d 124, 157, 761 P.2d 588 (1988). The *Jones* court determined that criminal record evidence is inherently prejudicial, but that a trial court may, in some circumstances, admit such evidence. Observing that the State, as the proponent of the criminal record evidence, has a difficult burden in light of the prejudice inherent in such evidence, the court listed several factors that should be considered in the weighing process. However, the court concluded that there is "no way of evaluating the propriety of the trial court's action" from a silent record. *Jones*, 101 Wn.2d at 123. Since there was no indication that the State met its burden, the reviewing

court in *Jones* determined that the trial court erred in admitting the disputed evidence and remanded for a new trial.

Also, under ER 404, the trial court must balance probative value against prejudicial effect on the record in order to justify admission of evidence of prior misconduct. *State v. Jackson*, 102 Wn.2d 689, 689 P.2d 76 (1984). *See, e.g.*, 5 K. Tegland § 121, at 436. In its discussion of the admissibility of a prior assaultive incident by the defendant, the *Jackson* court stated:

> We have frequently observed that this balancing of probative value versus prejudice should be done on the record. . . .
> . . . .
> We cannot overemphasize the importance of making such a record. Here, as in cases arising under ER 609, the absence of a record precludes effective appellate review. Moreover, a judge who carefully records his reasons for admitting evidence of prior crimes is less likely to err, because the process of weighing the evidence and stating specific reasons for a decision insures a thoughtful consideration of the issue. These reasons, as well as others, led us to conclude in *Jones* that a trial judge errs when he does not enunciate the reasons for his decision.

(Citations omitted.) *Jackson*, 102 Wn.2d at 693-94.

These cases emphasize the fact that the likelihood of unfair prejudice is particularly great in admitting certain types of evidence. When the degree of risk is high, a court enhances the protection against the admission of prejudicial evidence by performing the ER 403 balancing test on the record. *See, e.g., State v. Dennison*, 115 Wn.2d 609, 801 P.2d 193 (1990) (admission of evidence of prior misconduct under ER 404(b)). The resulting record of the trial court's consideration also assists the reviewing court in evaluating the reasons for admission of the evidence.

The evidence presented in the instant case, the expert testimony of Mrs. Carson's treating physician presented by the defense, inevitably presents a high risk of unfair prejudice. *See Piller v. Kovarsky*, 194 N.J. Super. 392, 476 A.2d 1279 (1984) (prejudice arises from the fact that plaintiffs will have to answer the argument that "their own doctor

says there is no malpractice"). The concerns of the *Loudon* court, while not a basis for extending the physician-patient privilege to the situation here, do demonstrate the strong public policy protection accorded to the doctor-patient relationship. As the court noted:

> The mere threat that a physician might engage in private interviews with defense counsel would, for some, have a chilling effect on the physician-patient relationship and hinder further treatment. The relationship between physician and patient is "a fiduciary one of the highest degree . . . involv[ing] every element of trust, confidence and good faith." This close confidential relationship is recognized by the Hippocratic Oath and in the ethical guidelines of the American Medical Association.

(Citation omitted.) *Loudon*, 110 Wn.2d at 679.

*Piller v. Kovarsky, supra,* contains a description of a physician's duty:

> [M]embers of [the medical] profession . . . owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation . . . That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation.

194 N.J. Super. 397 (quoting *Alexander v. Knight*, 197 Pa. Super. 79, 177 A.2d 142, 146 (1962)).

Whether or not we agree with the *Piller* court's characterization of a physician's duty to his or her patient, the very existence of the statutory physician-patient privilege and the protection provided to it by our courts, *e.g., Loudon v. Mhyre, supra,* indicate the great public regard and esteem for the relationship. Herein lies the potential danger in a treating physician's testifying for his patient's opponent. Because doctors are viewed as owing this broadly defined duty of loyalty to their patients, jurors are likely to perceive expert testimony adverse to a patient as a betrayal. The prejudice occurs when the jury, seeking to reconcile this breach of the trust relationship, concludes, without careful scrutiny of the testimony, that the patient's case is clearly without merit. This sort of bias against a party meets the definition of ER 403 prejudice — deciding a

case on an improper basis rather than on a careful evaluation of the evidence.

In addition, there is the perception and the danger that the plaintiff's doctor may base his expert testimony, at least in part, on medical information provided by the patient. Although the *Loudon* court was concerned about ex parte contacts, not trial testimony, its concerns apply to both. The court determined that it would be unfair to the physician and too great a gamble to require the doctor to decide whether certain information was legally relevant. Likewise, it is unfair to the doctor and very risky to rely on the treating physician to distinguish testimony based on privileged information from that based on prior training and experience.

In this case, Dr. Duenhoelter, in an evidentiary hearing, described his discomfort in being placed in this situation:

> I would have to leave it up to the judge to see if whatever I respond to if this is ethical. I don't want to be put into a position where I am doing anything that is unethical . . . And if the court thinks that this is appropriate that I express my opinion, I will. And apparently [that] seems to be [the] big discussion that if I am a witness this morning what is appropriate and what is not. And I share my bewilderment in this.

█ There are several factors which the trial court should consider before allowing plaintiff's doctor to testify as an expert for the defendant: (1) whether there is a compelling need for the defense to call this particular doctor; (2) whether there are alternative experts available; (3) the likelihood that the testifying physician is basing the opinion in part upon information obtained from the patient; (4) whether the physician-patient relationship is ongoing; (5) whether the plaintiff needs to call the doctor to establish damages; and (6) whether the condition treated is the same or similar to the condition at issue in the lawsuit.

The prejudicial impact of a treating physician's testimony as a defense expert will not inevitably outweigh the probative value of the testimony. However, because of its inherent prejudice, because this testimony is damaging to the fiduciary doctor-patient relationship protected by stated

policy of the State of Washington, and because of the risk of causing the doctor to disclose confidential medical information in violation of his Hippocratic oath, this court must carefully scrutinize the trial court's rationale. This requires a record of the trial court's ER 403 evaluation.

Accordingly, we hold that, prior to allowing a treating physician to testify as an expert for the defense, the trial court must balance on the record the above factors pursuant to ER 403. Failure to do so is reversible error.[5]

In this case there is no record that the trial court considered any of the above factors prior to ruling in favor of allowing Dr. Duenhoelter's testimony. (1) There is no showing in the record of any compelling need for Dr. Duenhoelter's testimony. (2) To the contrary, the record suggests that alternative experts were available. At trial, the Carsons identified several other doctors listed by the defense in support of their argument that Dr. Duenhoelter's testimony would be cumulative and prejudicial. In response, the defense contended that it had the right to call several witnesses, but did not argue that there were no available alternatives to Dr. Duenhoelter. (3) In order for Dr. Duenhoelter to determine the appropriate procedure to use to deliver the Carsons' child, it was necessary for him to obtain a history from Mrs. Carson regarding her former delivery and to examine the same anatomical area as was at issue in this action. Thus, it is likely that the doctor did base his opinion, at least in part, upon information obtained from her. (4) The record does not indicate whether the physician-patient relationship was ongoing at the time of trial. (5) In this case Mrs. Carson did not call her treating physician to establish damages. Nonetheless, her counsel argued that appellants needed Dr. Duenhoelter's testimony regarding those damages incurred due to the necessity of delivering the second child by caesarean section. This testimony was

---

[5]We do not contemplate that the extension of the balancing requirement to those ER 403 claims involving the expert testimony of a treating physician will "unnecessarily and unreasonably intrude upon the trial court's management of the trial process." *Gould*, 58 Wn. App. at 184.

obtained during cross examination of Dr. Duenhoelter. Thus plaintiffs were faced with the dilemma of presenting the witness as highly knowledgeable on one hand, and impeaching his expert opinion on the other. (6) The medical procedure at issue in the lawsuit — childbirth — is similar to the medical condition treated by Dr. Duenhoelter — Mrs. Carson's second pregnancy.

We are convinced that a careful weighing, conducted on the record is the best way to serve this state's public policy objectives: to protect the patient by avoiding the disclosure of confidential medical information and to preserve the fiduciary trust relationship between physician and patient. *See Loudon v. Mhyre, supra.* Absent a record of the trial court's consideration of the above factors, we are not able to conduct a meaningful review of the claimed error.

Accordingly, we reverse and remand for a new trial.

PETRICH, C.J., and ALEXANDER, J., concur.

Reconsideration denied September 22, 1992.

Review granted at 120 Wn.2d 1025 (1993).