THE ESTATE OF JANET GAIL MAY, *Respondent,* v. STANLEY J. ZORMAN *et al., Petitioners.*

*Davies, Pearson, Anderson & Gadbow, Erick R. Alden, Calbom, Walker, Cox & Andrews,* and *Willard Walker,* for petitioners.

*Klingberg, Houston, Reitsch, Cross & Frey* and *Judson T. Klingberg,* for respondent.

FARRIS, A.C.J.—This cause is before the court on a writ of certiorari to review an order of the trial court compelling each defendant to answer specific questions asked in depositions to which objections were made. Defendants were ordered by the trial court to testify generally regarding fact and opinion without regard to whether such questions require testimony as an expert witness on (1) the

standards of care in the community, (2) the defendant's own standard of care, (3) the standard of care of any other defendant, (4) the defendant's own violation of a standard of care and (5) any other defendant's violation of a standard of care.

Janet Gail May died in Cowlitz General Hospital following two surgical procedures. It is alleged that her death is the result of the negligence of the three named defendants. The death certificate completed by Dr. Zorman, one of the defendants, specifies the cause of death as "Intestinal Fistula, Gangrene of small bowel, Foreign body (sponge) in abdomen."

Thomas James Fox, M.D., F.A.C.S., J.D., whose qualifications as an expert are not disputed, has given an opinion in writing regarding the standard of medical care that Mrs. May received. His report indicates a willingness to be of further assistance.

We must therefore decide whether a defendant who performed certain acts in his capacity as an expert must respond to questions calling for his expert opinion regarding those acts when it is alleged that he acted negligently, even though an independent expert opinion is available.

■ In a malpractice action, the opinion of the treating physician is or may be an "operative fact." What he did, and the reasons for it, what observations he made, his conclusions from those observations, what procedures he followed and why and what happened in the course of or as a result of those procedures, are matters directly related to his treatment of the patient. Questions designed to elicit information regarding his treatment of the patient are pertinent and proper whether they call for an expression of opinion or fact. *See Myers v. St. Francis Hosp.*, 91 N.J. Super. 377, 220 A.2d 693 (1966).

> Where the expert testimony of a defendant doctor is brought into issue as a result of his exercise of expert judgment, pretrial discovery relating to his opinion and exercise of judgment in the course of treating his patient is no different from any case in which an adverse party has knowledge of relevant matters. To hold otherwise

would, particularly in a medical malpractice case, put a plaintiff to a disadvantage. The critical information necessary to a proper understanding and presentation of the case is almost exclusively within the knowledge of the defendant-expert. . . .

. . . [The defendants'] findings and actual course of treatments, their diagnoses and their opinions as to the proper course of treatment, are legitimate subjects of inquiry. The opinions, of course, must relate to the treatment rendered [the] plaintiff.

*Rogotzki v. Schept*, 91 N.J. Super. 135, 153, 219 A.2d 426 (1966). *See also Anderson v. Florence*, 288 Minn. 351, 181 N.W.2d 873 (1970).

The defendant doctors treated the patient as experts. Inquiry regarding the standards of established medical practice in the community and their knowledge of it is proper. *See Libby v. Conway*, 192 Cal. App. 2d 865, 13 Cal. Rptr. 830 (1961).

*McDermott v. Manhattan Eye, Ear & Throat Hosp.*, 15 N.Y.2d 20, 27, 255 N.Y.S.2d 65, 203 N.E.2d 469 (1964), wherein the court was persuaded in part by the difficulty in securing independent medical testimony, nevertheless contains language with which we agree:

It is at least arguable that the doctor's knowledge of the proper medical practice and his possible awareness of his deviation from that standard in the particular case are, in a real sense, as much matters of "fact" as are the diagnosis and examination he made or the treatment upon which he settled. More importantly, however, by allowing the plaintiff to examine the defendant doctor with regard to the standard of skill and care ordinarily exercised by physicians in the community under like circumstances and with regard to whether his conduct conformed thereto, even though such questions call for the expression of an expert opinion, the courts do no more than conform to the obvious purpose underlying the adverse-party-witness rule. That purpose, of course, "is to permit the production in each case of all pertinent and relevant evidence that is available from the parties to the action".

The defendants here need not answer purely hypothetical questions nor must they give an opinion that would be pure conjecture; but questions which relate to the treatment given or not given to Mrs. May are proper inquiry and they must be answered without regard to whether they call for an expert opinion on the conduct of the defendant questioned or any other defendant. Medical opinion formed at the time the patient was treated is a proper subject for inquiry. *See Myers v. St. Francis Hosp., supra.*

We do not find a basis in the record for requiring the defendants to answer any question that calls for a legal conclusion. Whether their conduct or the conduct of any codefendant was in fact negligent is a question calling for opinion that the defendants need not express.

The trial court properly compelled Dr. Smith to answer questions asked in his deposition at: p. 19, line 15; p. 20, line 9; p. 62, line 22; p. 63, line 2; p. 76, line 6; p. 83, line 24; p. 86, line 21; p. 90, line 11; p. 91, line 23; p. 102, line 22; p. 103, line 18; p. 104, line 17; p. 105, lines 2, 9 and 15; p. 144, line 22; p. 145, line 3; p. 164, line 23. (See Appendix, part 1.)

The following questions need not be answered: p. 101, line 25 and p. 163, lines 3 and 9. (See Appendix, part 2.)

Petitioners argue that they are entitled to a protective order under CR 43(f)(1) and CR 30(b). This question was not presented to the trial court. It will not be considered on review. *Daniels v. Pacific Northwest Bell Tel. Co.,* 1 Wn. App. 805, 463 P.2d 795 (1970); *Amsbury v. Cowles Publishing Co.,* 76 Wn.2d 733, 458 P.2d 882 (1969).

Remanded for proceedings in accordance with this opinion.

JAMES and SWANSON, JJ., concur.

### APPENDIX

#### Part 1

P. 19, line 15: "Q Do you disagree with the findings of Dr. Zorman in his final summary, his final diagnosis?

P. 20, line 9: "Q All right, now Doctor, do you agree with the

conclusion of Dr. Zorman, and the death certificate as to the cause of death?

P. 62, line 22: "Q   I see, were you surprised she hadn't had any?

P. 63, line 2: "Q   Would you have had X-rays taken on readmission?

P. 76, line 6: "Q   I see, so if she had been operated on a day or two after admission her risk would have been less?

P. 83, line 24: "Q   Well, in your opinion should it have been done by the time it was done?

P. 86, line 21: "Q   That would include a senior active and —

P. 90, line 11: "Q   Isn't it a standard of medical care for a doctor or a surgeon to tell the patient what the risks of the operation are?

P. 91, line 23: "Q   Between the time that the first operation was had and before the second operation took place did you discuss with Dr. Zorman whether he had the right to perform the second operation in the —

P. 102, line 22: "Q   As I understand it, Doctor, it is your opinion that when she came out of the operating room from the second operation that there was still a chance to save her?

P. 103, line 18: "Q   What medical treatment should she have had to save her?

P. 104, line 17: "Q   All right, now what course of treatment would be consistent with the standard of care to make her well?

P. 105, lines 2, 9 and 15: "Q   And is there any treatment that she was given during that period that was not in accordance with the standard of care — Q   Was there any treatment in the postoperative period of the second operation that was given in your opinion, which shouldn't have been given? Q   During the postoperative period of the second operation was there any treatment that was given that in your opinion should not have been given?

P. 144, line 22: "Q   In your opinion did this patient need surgery between November 8 and the time of her death?

P. 145, line 3: "Q   (Interposing) Do you feel surgery was necessary at any time between the 8th and the 16th?

P. 164, line 23: "Q   Wasn't there some treatment that could have been given this patient when you saw her on the 15th?"

### Part 2

P. 101, line 25: "Q   And why didn't you save her?

P. 163, lines 3 and 9: "Q   Actually in the postoperative period, and I am talking about the second operation, you really were wearing two hats, weren't you? Q   You had two roles, you were chief of staff at one time and at the same time you were a consultant?"