194 N.J. Super. 392 (1984)
476 A.2d 1279
SYLVIA PILLER, AN INFANT BY AND THROUGH HER NATURAL PARENTS AND GUARDIANS AD LITEM JOSEPH PILLER AND CECILIA PILLER, AND JOSEPH PILLER AND CECILIA PILLER, INDIVIDUALLY, PLAINTIFFS,
v.
ABRAHAM C. KOVARSKY, M.D., RALPH LEVINE, M.D. AND ABRAHAM C. KOVARSKY AND RALPH LEVINE, A PROFESSIONAL CORPORATION KNOWN AS WESTWOOD ORTHOPEDIC GROUP, P.A., PASCACK VALLEY HOSPITAL AND LOUIS YCRE (OR HIS PREDECESSOR) ADMINISTRATOR OF PASCACK VALLEY HOSPITAL, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 19, 1984.
*394 Saverio Cereste for plaintiffs (Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz, attorneys).
Michael J. Keating, for defendants Abraham C. Kovarsky, M.D., Ralph Levine, M.D. and Westwood Orthopedic Group, P.A. (Dughi & Hewit, attorneys).
Peter Blejwas, for defendants Pascack Valley Hospital and Louis Ycre (Luongo & Catlett, attorneys).
O'HALLORAN, J.S.C.
The issue presented by plaintiffs' motion in this medical malpractice case is whether the defense should be permitted to call a treating physician as a liability expert witness at trial.
On May 2, 1979 the infant plaintiff severely fractured her left arm when she fell from a tree. She was treated by defendant orthopedists, Drs. Levine and Kovarsky, at defendant Pascack Valley Hospital. Dr. Levine reduced the fractures during surgery and then immobilized the arm by cast traction. Unfortunately the infant plaintiff developed a condition known as Volkman's ischemic contracture, which has left her arm deformed. Upon diagnosing this condition, Dr. Levine performed *395 further surgery and then, at defendants' suggestion, care of the infant plaintiff was transferred to Dr. Harold Dick, a prominent orthopedist at Columbia Presbyterian Hospital who specializes in pediatric reconstructive surgery, and under whom defendant Dr. Levine once trained. Dr. Dick has performed numerous operations on the infant plaintiff and she still remains under his care.
In May 1981 plaintiffs instituted this action alleging that the deformity of the infant plaintiff's arm was caused by the negligence of the defendants in failing to recognize and treat the impending condition. About one and one half years ago counsel for the defendant physicians notified plaintiffs' counsel that Dr. Dick had agreed to act as a liability expert on their behalf. They thereafter served a copy of his report. They intend to call Dr. Dick at trial, along with another orthopedic surgeon, to testify that the defendant physicians did not deviate from accepted standards of medical practice in their treatment of the infant plaintiff. Of course, plaintiffs intend to call Dr. Dick at trial to testify as the infant plaintiff's treating physician. About 9 months ago plaintiffs' counsel advised defense counsel by letter that they objected to Dr. Dick being called as a defense expert, but they did not file this motion to bar his testimony until the eve of trial.
Defendants argue that they should not be deprived of the testimony of an expert of Dr. Dick's qualifications just prior to trial, especially since they have spent considerable time in the last one and one half years consulting with him in preparation for trial. A persuasive argument can be made that plaintiffs have waived their right to object by waiting so long to file this motion. But if Dr. Dick should in fairness be barred from testifying as a defense expert, it can be done in such a way that will not prejudice the defendants. I am also cognizant of the fact that if I deny the motion simply because of the impending trial date, the infant plaintiff could ask for a voluntary dismissal, reinstitute suit and raise the same question later. The issue should be decided now on its merits.

*396 I

The physician-patient relationship
The patient-physician privilege created by N.J.S.A. 2A:84A-22.1 et seq. does not bar Dr. Dick's testimony as a defense expert. Any privilege was waived by institution of this action by reason of N.J.S.A. 2A:84A-22.4 which provides that "[t]here is no privilege under this act in an action in which the condition of the patient is an element or factor of the claim ... of the patient...." Indeed, because of this waiver, the defendants could depose Dr. Dick and, if they wish, call him as a fact witness at trial. But the testimonial privilege created by the statute, and its waiver, do not answer the question whether defendants can go beyond this and engage Dr. Dick as a voluntary expert witness as to the liability of the treating physicians who preceded him.
The purpose of the patient-physician privilege is to enable the patient to secure medical services without fear of betrayal and unwarranted embarrassing and detrimental disclosure in court of information which might deter him from revealing his symptoms to a doctor to the detriment of his health. State, in Interest of M.P.C., 165 N.J. Super. 131, 136 (App.Div. 1979). While the statutory privilege is not a direct bar to what the defendants seek to do here, it does confirm that the established public policy of this state recognizes a confidential relationship between patient and physician for the benefit of the patient. Even before enactment of the statute, our Supreme Court in Hague v. Williams, 37 N.J. 328 (1962) recognized a limited right against non-testimonial disclosure because of the confidential nature of the relationship. The nature of that relationship imposes fiduciary obligations on the physician because it is one of trust and confidence in which the utmost good faith must be exercised. 70 C.J.S., Physicians and Surgeons, § 36. Recently, in Perna v. Pirozzi, 92 N.J. 446, 463 (1983), a so-called "ghost surgery" case, the Supreme Court *397 referred to the fiduciary duty owed by the surgeon to his patient.
There is no reported New Jersey decision addressing the issue. A Pennsylvania court has described the ramifications of the patient-physician relationship rather forcefully. In Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142 (Super.Ct. 1962), where a verdict in favor of plaintiffs in a motor vehicle case was set aside as inadequate, one of plaintiff's treating physicians had given a report to a physician investigating the case for defendants. Although the court did not consider this fact significant in its decision, it said it would give its view on the incident, and expressed its displeasure with the doctor as follows:
We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time.... [177 A.2d at 146.]
More recently, in Miles v. Farrell, 549 F. Supp. 82 (N.D.Ill. 1982), a medical malpractice action, it was held that a physician who treated plaintiff both before and after he was retained as an expert by one of the defendants, and who failed to reveal to plaintiff that he had been so retained by that defendant, could not testify on behalf of defendants either as an expert or as a treating physician. The court pointed out that the physician not only owed a fiduciary duty of confidentiality to the plaintiff, but as an expert employed by the defendant he had a clear conflict of interest which he had an obligation to disclose to his patient. Here Dr. Dick's dual position has been disclosed, but plaintiffs have not consented and in fact have objected, to his continuing in a position of conflicting interest. Finally, the trial judge said that it is also "likely" that a physician owes a duty of loyalty to his patient which would prevent him from testifying as an expert against his patient. The parties had not *398 briefed that issue, however, and the court noted that it was not necessary to include it as a basis for its ruling on what it perceived to be a physician's duty of loyalty.
Defendants rely upon Panko v. Consolidated Mutual Ins. Co., 423 F.2d 41 (3 Cir.1970). There plaintiff brought a personal injury action against Food Fair Stores, Inc., arising out of a fall in a New Jersey supermarket and claimed that the trauma activated and aggravated a dormant breast cancer. Defendant, the supermarket's insurance carrier, requested and received a form from plaintiff's doctor in which he said that the accident did not cause the carcinoma and any aggravation of it was speculative. Defendant discussed plaintiff's condition with the doctor and he testified at the trial, which concluded with a jury verdict in favor of defendant's insured. The present action was brought in Pennsylvania against the insurance company alleging that it tortiously induced the divulgence of confidential information resulting in loss of the personal injury action. In affirming a summary judgment in favor of defendant, the circuit court held that the disclosures made by the doctor during trial testimony were not wrongful under either New Jersey or Pennsylvania law, and even assuming that the pre-trial disclosures were tortious, there was no basis for finding that they caused the loss of the personal injury case. This decision, in which the doctor merely provided medical testimony as to the cause of the condition he was treating, is clearly distinguishable from the issue at bar where the treating doctor wishes to offer to the jury his opinion as to whether his predecessors deviated from accepted standards of medical practice.
Defendants argue that a physician volunteering to testify as a defense expert does not in any way damage the essence of the relationship with the patient because the quality of medical treatment is not lessened. But it could not help but have a detrimental effect on the quality of the relationship, and who can say that this would not thereby affect the well-being of the patient. Furthermore, volunteering to be an adversary exploits the relationship because the physician's opinions as to liability *399 may rest partially on information gained indirectly by him only because of his position of trust, whereas precluding his opinion testimony on liability will in no way hinder the jury's quest for the true facts.
I conclude that the fiduciary nature of the relationship should preclude a physician from testifying against his patient as a liability expert, at least in a medical malpractice action involving the very condition for which the physician has treated the patient.

II

Evidence Rule 4
Additionally, Evid.R. 4 (Anno. 1983) gives a trial judge discretion to exclude evidence "... if he finds that its probative value is substantially outweighed by the risk that its admission will ... (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury."
While the content of Dr. Dick's opinion testimony would not be prejudicial in itself, I find that its probative value is substantially outweighed by the unduly prejudicial manner of its presentation, as well as the substantial danger that the jury will be misled. The prejudice arises from the fact that the plaintiff was referred by defendants to Dr. Dick for treatment because of his outstanding ability to treat the particular condition involved, that they will have to call him as a witness on the damage phase of their case and present him as a highly qualified expert in his field, and that they then will have to answer an argument that "their own doctor says there is no malpractice." The defendants have an unfair advantage when they present Dr. Dick because the plaintiffs have already necessarily vouched for his credibility and the value of his opinions. While this may be a clever defense strategy, its inherent prejudice substantially outweighs the probative value of Dr. Dick's opinion on liability. A trial judge has discretion to prevent unfair innuendo which might arise as a result of trial strategy. Surely the defense can find another specialist of Dr. *400 Dick's caliber to testify as their expert; indeed, they have named another orthopedist who is presumably qualified to state the same opinions.
It is true that bifurcation of the trial would remove the Evid.R. 4 objection because Dr. Dick would then be testifying in his different capacities before different juries, but in this case the issues of deviation, proximate cause and aggravation of the infant plaintiff's condition are so intertwined that I would not foist bifurcation on the parties without their consent  and all counsel objected to the suggestion at oral argument of the motion.

CONCLUSION
For the foregoing reasons, I conclude that a treating physician is barred from testifying as a liability expert for the defense in a medical malpractice action.
Plaintiffs' motion to bar Dr. Harold Dick from testifying as a liability expert for the defendants in this case is granted. The order I enter will include a provision allowing the defendants a reasonable time to obtain a substitute liability expert witness if they wish.