[No. 59887-8.   En Banc.   February 10, 1994.]

TERRY L. CARSON, ET AL, *Respondents*, v. BETSY L. FINE ET AL, *Petitioners*.

Reed McClure, by William R. Hickman, Heather Houston, and Pamela A. Okano; Rosenow, Johnson, Graffe, Keay, Pomeroy & Moniz, by Jack G. Rosenow and Marilyn W. Schultheis, for petitioners.

Smythe & Van Siclen P.S., Inc., by Robert C. Van Siclen and John S. Stocks; Weinstein Fischer & Riley, by Kathryn A. Ellis; Preston Thorgrimson Shidler Gates & Ellis, by Kathleen B. Barrett and Robert J. Backstein, for respondents.

Christine O. Gregoire, Attorney General, and Michael Madden, Senior Counsel, amicus curiae for petitioners.

Malcolm L. Edwards on behalf of the Washington State Medical Association, amicus curiae for petitioners.

Russell C. Love on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioners.

Joseph E. Shickich, Jr., on behalf of Washington State Hospital Association and Group Health Cooperative of Puget Sound, amici curiae for petitioners.

Bryan P. Harnetiaux and Gregg L. Tinker on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

Chris Quinn-Brintnall on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

MADSEN, J. — At issue is the admissibility of adverse opinion evidence offered by a treating physician against the plaintiff, his former patient, in a malpractice action filed against another physician. In this case, the Court of Appeals reversed the defendant's jury verdict and held that the trial court should have balanced, on the record, the probative value of the proposed adverse testimony against the danger of its unfair prejudice under ER 403 before admitting the testimony. We granted review and now reverse the Court of Appeals.

## FACTS

On August 8, 1985, Carmen Carson (hereafter referred to as the plaintiff) gave birth to her first child. Dr. Betsy Fine, a family practitioner, delivered the baby. Dr. Fine (hereafter referred to as the defendant) performed an episiotomy during the delivery. The incision developed into a fourth degree laceration which the defendant attempted, unsuccessfully, to repair.

Plaintiff subsequently consulted Dr. Gordon Klatt about the laceration. Dr. Klatt diagnosed a rectovaginal fistula, an abnormal passage leading from one abscess cavity or organ to another. He attempted repair surgery, but was also unsuccessful. Plaintiff then consulted Dr. Aaron Kemp, who performed a third repair procedure in June 1986. Although the operation improved plaintiff's condition, she continued to suffer from incontinence. In July 1986, plaintiff and her husband sued the defendant and Dr. Klatt. The suit against Dr. Klatt was later dismissed.

In July 1987, plaintiff, pregnant with her second child, began seeing Dr. Johann Duenhoelter for prenatal care. Dr. Duenhoelter was aware of plaintiff's condition and delivered the second child by caesarean section in January 1988.

In connection with her lawsuit, plaintiff agreed to an order waiving her physician-patient privilege with regard to all physicians who had provided her care or treatment, except for four experts consulted in anticipation of litigation. The order further provided that the defense could conduct ex parte interviews with her treating physicians. At the time of the order, Dr. Duenhoelter was one of plaintiff's treating physicians. At an ex parte interview, he opined that the defendant's conduct was not negligent and was within the standard of care. The defense listed Dr. Duenhoelter as an expert witness and took his deposition, where he repeated that the defendant had not acted negligently in treating the plaintiff.

Prior to the deposition of Dr. Duenhoelter, this court issued *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988). In *Loudon*, this court held that a plaintiff-patient's

waiver of the physician-patient privilege does not authorize ex parte communications between the defendant and the plaintiff's treating physicians. The court thus prohibited ex parte interviews between a plaintiff's physicians and defense counsel. *Loudon*, at 682.

In a pretrial motion, plaintiff argued for the exclusion of Dr. Duenhoelter's expert testimony, contending that the physician-patient privilege and the fiduciary relationship between doctor and patient should prohibit a treating physician from testifying as an expert witness against his or her patient, and also claiming that Dr. Duenhoelter had had ex parte contacts with the defense in violation of *Loudon*. Plaintiff also asked the trial court to exclude the doctor's testimony, under ER 403, as cumulative and unfairly prejudicial. The trial court denied the motion and Dr. Duenhoelter testified for the defense. The jury found no negligence on the defendant's part.

Plaintiff appealed and argued that Dr. Duenhoelter violated his fiduciary duty and the physician-patient privilege by offering adverse opinion testimony, that his testimony was cumulative and unfairly prejudicial under ER 403, and that the trial court should have excluded Dr. Duenhoelter's testimony because *Loudon* prohibited ex parte contacts as a matter of law.

The Court of Appeals held that the physician-patient privilege did not bar the plaintiff's treating physician from testifying as a defense expert and that Dr. Duenhoelter's testimony did not violate the rule against ex parte contacts in *Loudon*. *Carson v. Fine*, 67 Wn. App. 457, 462, 836 P.2d 223 (1992). The court noted that plaintiff had specifically waived any privilege and had permitted ex parte contacts by entering into the agreed order. *Carson*, at 462. The Court of Appeals also explained that the fact that the defense already had an expert to testify regarding standard of care did not mean that Dr. Duenhoelter's testimony was needlessly cumulative. The court noted, moreover, that the admission of cumulative evidence is not prejudicial error. *Carson*, at 462-63.

Nevertheless, the Court of Appeals reversed. It held that, under ER 403, the nature of the treating physician's defense testimony required the court to weigh the probative value of such testimony against the danger of unfair prejudice on the record for purposes of appellate review. *Carson*, at 467. The court set forth six factors that the trial court should have considered before allowing the plaintiff's treating physician to testify on behalf of the defense. *Carson*, at 466. Since the trial court had failed to evaluate these factors on the record, the Court of Appeals lacked the basis to review whether the evidence had been properly admitted. Thus, the Court of Appeals reversed and remanded so that the trial court could consider the six factors it proposed before admitting Dr. Duenhoelter's testimony. *Carson*, at 468. The defendant then sought review of the Court of Appeals' opinion, which this court granted.

ANALYSIS

I

In her petition for review, the defendant argues that the plaintiff waived the physician-client privilege when she filed an action for malpractice. She alleges that the Court of Appeals then effectively reinstated the privilege by creating an insurmountable burden for the defense to overcome in order to present the adverse testimony of a treating physician. In response, the plaintiff contends that while she may have waived the physician-patient privilege with regard to any factual evidence of her medical condition, her waiver did not extend to adverse opinion evidence offered by one of her treating physicians. In evaluating these arguments it is first necessary to determine the purpose and scope of Washington's physician-patient privilege.

■ This privilege is set forth in RCW 5.60.060(4), and prohibits examining a physician in a civil action as to any information acquired in attending a patient without his or her consent. The privilege is a creature of statute, and thus is a procedural safeguard and not a rule of substantive or constitutional law. *Department of Social & Health Servs. v.*

*Latta,* 92 Wn.2d 812, 819, 601 P.2d 520 (1979); *State v. Boehme,* 71 Wn.2d 621, 634, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013, 20 L. Ed. 2d 164, 88 S. Ct. 1259 (1968). At common law, no testimonial privilege existed for communications or information exchanged between patient and physician. *Latta,* at 819; *Boehme,* at 634.

■ One purpose of the statutory privilege is to surround patient-physician communications with a "cloak of confidentiality" to promote proper treatment by facilitating full disclosure of information. *Latta,* at 819; *Boehme,* at 635. Another purpose of the privilege is to protect the patient from embarrassment or scandal which may result from revelation of intimate details of medical treatment. *Latta,* at 819; *Boehme,* at 636.

■ ■ As a statute in derogation of common law, RCW 5.60.060(4) is to be construed strictly, and limited to its purposes. *Latta,* at 819; *see also Randa v. Bear,* 50 Wn.2d 415, 420, 312 P.2d 640 (1957). Indeed, the statutory privilege is now expressly limited by legislative amendment. In 1986, the Legislature amended RCW 5.60.060(4) to provide that the privilege is deemed to have been waived 90 days after the filing of a personal injury or wrongful death action. RCW 5.60.060(4)(b).[1] The amendment is a codification of existing Washington case law which holds that waiver occurs even without plaintiff's express consent. Specifically, this court has held that the introduction by the patient of medical testimony describing the treatment and diagnosis of an illness waives the privilege as to that illness, and the patient's own testimony to such matters has the same effect. *Randa,* at 421; *McUne v. Fuqua,* 42 Wn.2d 65, 76, 253 P.2d 632 (1953).

Other authorities agree that a patient voluntarily placing his or her physical or mental condition in issue in a judicial proceeding waives the privilege with respect to information

---

[1] Because plaintiff filed her action before August 1, 1986, this amendment does not apply to her case. *See* Laws of 1986, ch. 305, § 910, p. 1367. As the Court of Appeals observed, however, plaintiff specifically waived any privilege by agreeing to the order allowing defense counsel to meet with her treating physicians. *Carson,* at 462.

relative to that condition. 1 John W. Strong, *McCormick on Evidence* 384 (4th ed. 1992); 8 John H. Wigmore, *Evidence* § 2389, at 855 (1961). Waiver occurs because the purpose of the privilege no longer exists.

> The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist.

8 J. Wigmore, at 855.

A waiver of this privilege as to one of plaintiff's physicians also constitutes a waiver as to other physicians who attended the plaintiff with regard to the disability or ailment at issue. *McUne*, at 74-76; *State v. Tradewell*, 9 Wn. App. 821, 824, 515 P.2d 172, *review denied*, 83 Wn.2d 1005 (1973), *cert. denied*, 416 U.S. 985, 40 L. Ed. 2d 762, 94 S. Ct. 2388 (1974). A patient who could select among various physicians' opinions, and claim privilege as to the remainder, would make a mockery of justice. *Tradewell*, at 824; *see also State v. Brewton*, 49 Wn. App. 589, 591, 744 P.2d 646 (1987). "It is not consonant with justice and fairness to permit the patient to reveal his secrets to several doctors and then when his condition comes in issue to limit the witnesses to the consultants favorable to his claims." 1 J. Strong, at 387-88; *see also* 8 J. Wigmore § 2390, at 862 (to call physician as witness to one's physical condition is waiver of privilege as to other physicians' knowledge of same condition). This conclusion is now expressly set forth in RCW 5.60.060(4)(b): "Waiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to *all* physicians or conditions . . .." (Italics ours.)

■ Moreover, contrary to the plaintiff's position here, we find that neither the statute nor Washington case law supports a distinction between opinion and factual evidence when determining the applicability of the privilege or its waiver. The Court of Appeals declined to draw a distinction between fact and opinion evidence offered by treating physicians in *Estate of May v. Zorman*, 5 Wn. App. 368, 487 P.2d

270 (1971). "In a malpractice action, the opinion of the treating physician is or may be an 'operative fact.' . . . Questions designed to elicit information regarding his treatment of the patient are pertinent and proper whether they call for an expression of opinion or fact." *Zorman*, at 369. More recently, the Court of Appeals held that opinion testimony offered by a treating physician was admissible to counter the plaintiff's claims of medical malpractice in *Peters v. Ballard*, 58 Wn. App. 921, 930, 795 P.2d 1158, *review denied*, 115 Wn.2d 1032 (1990). We also observe that neither the waiver in RCW 5.60.060(4) nor the order voluntarily entered into by plaintiff in this case distinguishes between fact and opinion evidence. Both fully waive the physician-patient privilege without regard to the type of testimony offered by a treating physician.

Plaintiff's argument that we draw such a distinction has similarly been rejected by other jurisdictions. *See Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987). In *Cates*, the lower court had found that while the medical malpractice plaintiffs had waived the physician-patient privilege regarding information obtained by their treating physicians in the course of treatment and diagnosis, the waiver did not automatically extend to opinion testimony offered by these physicians. *Cates*, at 13. On review, the Supreme Court rejected the notion of a "divisible waiver", noting initially that North Carolina protects the physician-patient relationship by statute. *Cates*, at 13. In strictly construing the statutory privilege, as the court was required to do, it found no basis for allowing a patient to waive his privilege as to information gained by his physician while maintaining it as to his physician's opinions. "A patient who discloses that which he has a right to keep confidential loses the right to claim the statute's protection." *Cates*, at 16. The court also declined to adopt the "divisible waiver" because of its possible misuse by plaintiffs in personal injury actions:

A divisible waiver could enable plaintiffs to elicit from their physicians factual details underlying their cases and then preclude these physicians from placing this information in a

legally relevant context. When a patient dissolves the fiduciary relationship with his physician by disclosing or permitting disclosure of details of their consultations, he should not, in fairness, be allowed to prevent the physician from stating an opinion which might aid the trier of fact in assessing the merits of the patient's case. To hold otherwise would enable patients to use the privilege not defensively to protect their confidences but offensively to suppress the truth in litigation.

*Cates*, at 16.

The District of Columbia Court of Appeals cited *Cates* and reached a similar result in *Richbow v. District of Columbia*, 600 A.2d 1063, 1069 (D.C. 1991). "Having waived the privilege as to factual information, a plaintiff may not keep from the factfinder the medical judgments and opinions which were derived from the treatment and which indeed shaped it." *Richbow*, at 1069; *see also* 8 J. Wigmore § 2390, at 861 (to call physician to stand, and examine him as witness to one's physical condition formerly communicated to him, is waiver of privilege in regard to *all* knowledge of condition). This waiver applies to treating physicians whether called by plaintiff or the defense.

We conclude that a plaintiff's waiver of the physician-patient privilege extends to all knowledge possessed by the plaintiff's doctors, be it fact or opinion. There is no basis in reason, the common law, or in statutory law to draw a distinction between the types of testimony a treating physician may offer once the physician-patient privilege has been waived, nor does the specific waiver executed in this case draw such a distinction. We therefore conclude that the physician-patient privilege barring Dr. Duenhoelter's opinion testimony was waived in this case.

## II

Next, we consider whether the Court of Appeals effectively reinstated this privilege by requiring an extensive, on-the-record balancing of probative value versus prejudicial effect pursuant to ER 403 before the adverse testimony of a treating physician is deemed admissible.

ER 403 authorizes the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice". The Court of Appeals held that a trial court must balance the probative value versus the prejudicial effect of a treating physician's proposed defense testimony pursuant to this rule by evaluating the following six factors on the record: (1) whether there is a compelling need for the defense to call this particular doctor; (2) whether there are alternative experts available; (3) the likelihood that the testifying physician is basing the opinion in part upon information obtained from the patient; (4) whether the physician-patient privilege is ongoing; (5) whether the plaintiff needs to call the doctor to establish damages; and (6) whether the condition treated is the same or similar to the condition at issue in the lawsuit. *Carson*, 67 Wn. App. at 466. The court decided that careful scrutiny of the trial court's rationale for admitting a treating physician's testimony as a defense expert was required because of the inherent prejudice of such testimony, because such testimony is damaging to the fiduciary doctor-patient relationship, and because of the risk of causing the doctor to disclose, in the course of offering expert testimony, confidential medical information obtained in treatment. *Carson*, 67 Wn. App. at 466-67.

In discussing the possible disclosure of confidential information, the Court of Appeals stated that it would be unfair and very risky to rely on the treating physician to distinguish. testimony based on privileged information from that based on prior training and experience. *Carson*, 67 Wn. App. at 466. We see no such risk or unfairness because, as stated earlier, the physician-patient privilege has been waived by the time a treating physician is called to testify in a medical malpractice action. Thus, whatever information the treating physician properly relied upon in reaching his or her opinion regarding the medical condition at issue cannot be privileged. Moreover, any concern regarding potential disclosures of extraneous, irrelevant medical information can be controlled by plaintiff's motions in limine or

by objections on the basis of relevancy. We do not see that the risk of disclosing irrelevant medical information warrants special scrutiny of the trial court's admission of adverse testimony by a treating physician.

■ We turn next to the Court of Appeals' concern that such testimony will damage the fiduciary doctor-patient relationship. Pursuant to this relationship, it is the duty of the physician to exercise the utmost good faith in dealing with his or her patient. B. Shartel & M. Plant, *Medical Practice* § 4-03, at 172 (1959); *Foster v. Brady*, 198 Wash. 13, 18, 86 P.2d 760 (1939). The relationship is predicated on the proposition that the physician has special knowledge and skill in diagnosing and treating diseases and injuries and that the patient has sought and obtained the services of the physician because of this expertise. 70 C.J.S. *Physicians and Surgeons* § 58, at 449 (1987); 61 Am. Jur. 2d *Physicians, Surgeons and Other Healers* § 167, at 298-99 (1981). Mutual trust and confidence are essential to the physician-patient relationship, and from these elements flow the physician's obligations to fully inform the patient of his or her condition, to continue to provide medical care once the patient-physician relationship has been established, to refer the patient to a specialist if necessary, and to obtain the patient's informed consent to the medical treatment proposed. 61 Am. Jur. 2d § 167, at 299; 70 C.J.S. § 58, at 448-49.

■ Rather than viewing the statutory physician-patient privilege as separate from the obligations imposed by the fiduciary relationship, we believe that the testimonial privilege created by the Legislature is simply the legal acknowledgment of those fiduciary duties. We do not see that the fiduciary obligations outlined above create a new or different basis for restricting a physician's testimony in court. In fact, the American Medical Association places upon physicians a duty to assist in the administration of justice. American Medical Association Principles of Medical Ethics § 9.07, at 81 (1981) (AMA Ethics). In providing such assistance, the physician "must not become an advocate or partisan in the legal proceeding. The medical witness

should be adequately prepared and should testify honestly and truthfully." AMA Ethics § 9.07, at 82.

In short, a physician's duties toward a patient, including the requirement of confidentiality, focus upon medical treatment and medical advice, and do not encompass legal advocacy, whether measured by testimony or a refusal to testify. Once a patient decides to file a medical malpractice action and disclose that which had been confidential, he or she cannot insist on continued confidentiality from her physicians regarding the condition at issue based on the fiduciary nature of their relationship. This conclusion finds support in *Cates*:

> When . . . the patient breaks the fiduciary relationship with the physician by revealing, or permitting revelation of, the substance of the information transmitted to the physician, the patient has, in effect, determined it is no longer important that the confidences which the privilege protects continue to be protected. Having taken this position, the plaintiff may not silence the physician as to matters otherwise protected by the privilege.

*Cates*, at 15. The California Court of Appeal similarly held that the fiduciary duty created through the physician-patient relationship does not preclude adversarial testimony by a treating physician in *Torres v. Superior Court*, 221 Cal. App. 3d 181, 270 Cal. Rptr. 401 (1990). The court so held after citing the following language from *Orr v. Sievert*, 162 Ga. App. 677, 292 S.E.2d 548 (1982):

> [W]e discern no restraint upon a doctor who has entered into a patient-doctor relationship and treated a patient from rendering an appropriate opinion as to the nature and quality of treatment afforded the same patient for the same course of illness by another physician where contention has arisen that the treatment afforded has resulted in medical malpractice. Once a patient places his care and treatment at issue in a civil proceeding, there no longer remains any restraint upon a doctor in the release of medical information concerning the patient within the parameters of the complaint. To hold otherwise would allow a patient to restrain a doctor who possesses the most relevant information and opinions from responding to inquiries as to such information or giving such opinions without a written authorization, court order or subpoena.

*Orr*, at 679-80, *quoted in Torres*, at 186-87. The *Orr* court recognized that the Hippocratic Oath taken by all doctors honors the confidentiality of information obtained from a patient. *Orr*, at 678. The court reasoned that once a patient files a complaint placing in issue the nature and quality of medical treatment, however, he or she waives the qualified right to privacy implicit in the Hippocratic Oath. *Orr*, at 679.

Once the plaintiff has waived the physician-patient privilege by filing a medical malpractice action, he or she may not object to a treating physician's testimony on the premise that the fiduciary relationship between physician and patient creates an additional restriction on the physician's testimony. "Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983); *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 551 (D.C. 1981); 8 J. Wigmore § 2192. While we acknowledge some authority to the contrary, we do not see the fiduciary nature of the physician-patient relationship as justification for restricting access to a treating physician's opinions. *See Piller v. Kovarsky*, 194 N.J. Super. 392, 476 A.2d 1279 (1984) (fiduciary nature of the relationship precludes physician from testifying against his patient); *but see Kurdek v. West Orange Bd. of Educ.*, 222 N.J. Super. 218, 536 A.2d 332 (1987) (treating physician's adverse testimony admissible because physician-patient privilege waived by placing physical condition at issue).

The third reason given by the Court of Appeals for requiring a trial court to make a record of its admission of a treating physician's adverse testimony was the inherent prejudice of such testimony. The court described the "potential danger" in a treating physician testifying for the defense as follows:

> Because doctors are viewed as owing [a] broadly defined duty of loyalty to their patients, jurors are likely to perceive expert testimony adverse to a patient as a betrayal. The prejudice occurs when the jury, seeking to reconcile this breach of the trust relationship, concludes, without careful scrutiny of the testimony, that the patient's case is clearly without merit.

This sort of bias against a party meets the definition of ER 403 prejudice —deciding a case on an improper basis rather than on a careful evaluation of the evidence.

*Carson*, at 465-66. The court supported its requirement of an on-the-record ER 403 balancing of a treating physician's adverse testimony by pointing out that a similar balancing is required when evidence of prior misconduct and prior convictions— evidence which it viewed as involving a similarly high risk of unfair prejudice—is sought to be admitted under ER 404 and ER 609. *See Carson*, at 463-64.

Under ER 609(a)(1), a prior felony conviction for an offense not involving dishonesty or false statement is admissible only if the trial court first determines that the probative value of the evidence outweighs its prejudicial effect to the party against whom the evidence is offered. Acknowledging the inherent prejudice of such evidence, this court requires trial courts to state, for the record, the factors that favor its admission or exclusion. *State v. Jones*, 101 Wn.2d 113, 120-22, 677 P.2d 131 (1984), *overruled on other grounds in State v. Brown*, 111 Wn.2d 124,761 P.2d 588 (1988).

Similarly, on-the-record balancing is required when determining the admissibility of prior misconduct under ER 404(b). *State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984); *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981). ER 404(b) states that evidence of other crimes, wrongs or acts is inadmissible to prove the character of a person in order to show action in conformity therewith. Such evidence is admissible, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Jackson*, at 693. The *Jackson* court observed that a record of a trial court's reasons for admitting evidence of prior misconduct is even more important than when evidence of prior crimes is admitted under ER 609:

> In ER 609 cases, the evidence is only admitted for one purpose — to impeach the defendant's credibility. Evidence can be admitted under ER 404, however, for several substantive purposes. Unless the trial court identifies the purpose for which it believes the evidence is relevant, it is difficult for that court

(or the reviewing court) to determine whether the probative value of the evidence outweighs its prejudicial effect.

*Jackson*, at 694.

■ As can be seen from this excerpt from *Jackson*, the focus of these rules clearly is upon the evidence, not upon the witness seeking to offer it. The problem with the Court of Appeals' notion of betrayal and the six evaluation factors proposed to counter it is that they focus on the identity of the witness rather than on the content of the proposed evidence. Four of the evaluative factors set forth by the Court of Appeals deal with witness identity rather than with the substance of the proposed testimony. One factor which the trial court must weigh is whether there are alternative experts available. Another factor which must be weighed is whether the defense has a compelling reason to call the particular doctor in question. Thus, under these two factors the *same* testimony becomes more or less prejudicial depending on whether there is any other witness who could offer the *same* evidence. The "prejudice" with which the Court of Appeals is concerned is that the jury will be more inclined to believe the treating physician than another expert. This is not the type of prejudice with which ER 404 and 609 are concerned. It is not the purpose of these rules, nor of ER 403, to exclude testimony because it is offered by an overly persuasive witness. Rather, the focus of these rules is on the prejudicial substance of the proposed testimony.

Even if we overlook the erroneous focus of the Court of Appeals' proposed factors, however, we do not see the reasons requiring a balancing on the record under ER 609 and ER 404(b) as applicable here. Under ER 403, the relevance of the evidence sought to be admitted is assumed. The only question is whether its probative value is outweighed by its prejudicial effect. In contrast, evidence falling within ER 404(b) is relevant only for certain purposes and the court must determine whether the relevance of prior misconduct and the purpose for which it is being offered have been established before it admits such evidence. Similarly, evidence of a prior conviction under ER 609 is admissible only

when it is relevant to the credibility of a witness who has testified. Admissibility of evidence under ER 403, unlike ER 404(b) and ER 609, does not depend on the purpose for which it is offered. Thus, the rationale for requiring the trial court to weigh its decision on the record under ER 404(b) and ER 609 is not present in the case of an ER 403 objection.

Furthermore, we do not see that the supposed prejudice of a treating physician's adverse testimony compares with the inherent prejudice presented by evidence of prior misconduct or prior convictions. In explaining this conclusion, we look to the meaning of prejudice as used in ER 403.

■■ ER 403 is the same as Federal Rule of Evidence 403, so we may look to both state and federal case law for guidance. *See* ER 403 comment, 1994 Washington Rules of Court, at 196. Both rules are concerned with what is termed "unfair prejudice", which one court has termed as prejudice caused by evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.' " *United States v. Roark*, 753 F.2d 991, 994 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 62 L. Ed. 2d 83, 100 S. Ct. 128 (1979)), *reh'g denied*, 761 F.2d 698 (11th Cir. 1985); *see also* 5 K. Tegland, Wash. Prac., *Evidence* § 106, at 349 (3d ed. 1989); *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (in determining prejudice, the linchpin word is "unfair"). Another authority states that evidence may be unfairly prejudicial under rule 403 if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or "triggers other mainsprings of human action." 1 J. Weinstein & M. Berger, *Evidence* § 403[03], at 403-36 (1985). Washington cases are in agreement, stating that unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 257, 744 P.2d 605 (1987); *State v. Cameron*, 100 Wn.2d 520, 529, 674 P.2d 650 (1983).

In this case, the challenged testimony consisted of Dr. Duenhoelter's statement that, in his opinion, the defendant's treatment was within the standard of care. We do not see this as evidence "dragged in" for the sake of its prejudicial effect, nor do we see it as arousing the jury's sense of horror or its sympathies. The probative value of testimony offered by a treating physician is presumed. *See Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 45, 395 P.2d 633 (1964) ("special consideration should be given to the opinion of the attending physician"). The ability of the danger of unfair prejudice to substantially outweigh the probative force of evidence is "quite slim" where the evidence is undeniably probative of a central issue in the case. *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1041 (11th Cir. 1988) (citing *Roark*, 753 F.2d at 994). Here, Dr. Duenhoelter's testimony was undeniably probative of the central issue: whether the defendant's care of the plaintiff fell below the applicable standard of care.

Equally important to recognize is that nearly all evidence will prejudice one side or the other in a lawsuit. Evidence is not rendered inadmissible under ER 403 just because it may be prejudicial. We note, for example, that accurate but graphic photographs are admissible even when repulsive or gruesome if their probative value outweighs their prejudicial effect. *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983); *State v. Toennis*, 52 Wn. App. 176, 188, 758 P.2d 539, *review denied*, 111 Wn.2d 1026 (1988). By the same token, police officers are allowed to testify in uniform, even if their presence is prejudicial to a defendant. *See* K. Tierney, *Courtroom Testimony: A Policeman's Guide* 51 (1970). Various types of evidence and witnesses prejudice one party or the other; prejudicial evidence and credible witnesses make lawsuits. Under ER 403 the court is not concerned with this ordinary prejudice. It is unthinkable that a trial court would decline to admit evidence probative of the central issue in a case based solely on the witness' profession, the manner in which the witness dresses or on whether the court believes that the jury may think that the

witness owes either party some obligation or loyalty. Instead, limitation of the number of experts per side, effective use of voir dire and cross examination, proper instructions to the jury concerning its duty to weigh credibility, and the standard admonition not to permit sympathy or prejudice to affect the verdict are the tools to direct the jury to a proper consideration of the evidence.[2]

■ In addition to the considerations discussed above we also note that under ER 403, the burden of showing prejudice is on the party seeking to exclude the evidence. 5 Karl Tegland, Wash. Prac., *Evidence* § 105, at 346 (1989). Through its 6-prong proposed evaluation, the Court of Appeals would reverse the usual ER 403 burden and force the party seeking admission to bear the burden of justification. Moreover, there is a presumption favoring admissibility under ER 403. *See* 5A K. Tegland § 237, at 243; 5 K. Tegland § 105, at 346. The Court of Appeals' requirement of a 6-factor evaluation is inconsistent with this presumption.

■ Finally, it should go without saying that ER 403 must be administered in an evenhanded manner. 5 K. Tegland § 105, at 346; *United States v. Sellers*, 566 F.2d 884, 886 (4th Cir. 1977). In the present case, one of plaintiff's treating physicians testified on her behalf that the defendant's treatment fell below the proper standard of care. Dr. Duenhoelter testified for the defense that the defendant's treatment was within the appropriate standard of care. Under *Sellers*, Dr. Duenhoelter's testimony was properly admitted: "[rule 403] may not be utilized to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue." *Sellers*, at 886; *see also* 5 K. Tegland § 105, at 346 ("If evidence has already been admitted on behalf of one party, similar evidence offered by the opposing party should not be excluded under Rule 403.") The Court of Appeals violated the requirement of evenhandedness under

---

[2]Limiting the number of experts should encourage both sides to select witnesses based on the strength of their testimony rather than their relationship to the plaintiff.

ER 403 even more fundamentally when it set up an evaluation aimed at excluding a treating physician's testimony only when offered by the defense. If a treating physician's testimony can prejudice the plaintiff, it can also prejudice the defense.

Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion. *State v. Gould*, 58 Wn. App. 175, 180, 791 P.2d 569 (1990); *State v. Gatalski*, 40 Wn. App. 601, 610, 699 P.2d 804, *review denied*, 104 Wn.2d 1019 (1985). While discretion does not mean immunity from accountability, we see no need or justification for extending the requirement of a balancing on the record to evidentiary objections and claims of error based on ER 403 alone. *See United States v. Dwyer*, 539 F.2d 924, 928 (2d Cir. 1976); *Gould*, at 184. "Such a rule would unnecessarily and unreasonably intrude upon the trial court's management of the trial process." *Gould*, at 184. While some reference to the ER 403 evaluation in the record is helpful to a reviewing court, we reject the 6-factor test proposed by the Court of Appeals as unworkable and contrary to the purposes of ER 403 and the Rules of Evidence in general.

We therefore hold that adverse testimony by a treating physician, if challenged under ER 403, may be evaluated as in any other challenge brought pursuant to this rule. While a balancing of probative value versus prejudicial effect on the record is helpful, it is not essential. Here, the trial court properly admitted Dr. Duenhoelter's testimony. It was undeniably probative of a central issue in the case and was offered in response to opinion testimony given by another of plaintiff's treating physicians. We do not see that the danger of unfair prejudice exceeded the probative value of such testimony, and we are mindful of the admonition that "[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978). The admission of Dr. Duenhoelter's testi-

mony fulfilled the requirement of a fair and evenhanded application of ER 403, and a detailed balancing on the record of probative value versus prejudicial effect was not a prerequisite to its admissibility.

## III

One remaining issue requires our attention. In her answer to the petition for review, plaintiff contended that the Court of Appeals erred in holding that defense counsel's ex parte contacts with Dr. Duenhoelter did not violate the prohibition of such contacts set forth in *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988).

As stated earlier, this court held in *Loudon* that defense counsel may not communicate ex parte with a plaintiff's treating physicians but must use formal discovery procedures. *Loudon*, 110 Wn.2d at 677. The court feared that ex parte interviews might result in disclosure of irrelevant, privileged information, and decided that the plaintiff's interest in avoiding such disclosure could best be protected by allowing plaintiff's counsel to participate in physician interviews. *Loudon*, at 678.

We disagree with plaintiff that the ex parte contacts in this case violated *Loudon*, and affirm the Court of Appeals' resolution of this issue. The initial meeting between the defendant and Dr. Duenhoelter occurred before *Loudon* was decided and was expressly authorized by plaintiff. Although she signed the authorization before *Loudon* was decided, she did not retract her permission after learning of the decision. Only one post-*Loudon* contact occurred, and it consisted of defense counsel telling Dr. Duenhoelter that they could not communicate until the deposition because defense counsel was unsure of how *Loudon* would affect the case. Defense counsel had no ex parte contacts with Dr. Duenhoelter about the plaintiff's treatment after *Loudon* was filed. Thus, we agree with the trial court and the Court of Appeals that the *Loudon* rule against ex parte contacts was not violated in this case.

Our resolution makes it unnecessary to address the remaining issues raised by the parties and by amicus curiae. Accordingly, we affirm and reverse in part the decision of the Court of Appeals. The judgment of the trial court in favor of the defendant is affirmed.

ANDERSEN, C.J., and DOLLIVER, SMITH, and GUY, JJ., concur.

JOHNSON, J. (dissenting) — The determinative issue here is not waiver of the physician-patient privilege as discussed by the majority at length. The key issue concerns the fiduciary relationship between doctors and their patients which underlies both the legislative and judicial protection afforded to this relationship. This fiduciary relationship is broader than the statutorily defined code of confidentiality and includes a duty to act consistent with the best interests of the patient. The extent to which we will permit the legal search for truth to harm this fiduciary relationship is the key question in this case. Where, as is the case here, alternative testimony is available to the defense, the fiduciary nature of this relationship should bar physicians from giving opinion testimony on standards of care in their patients'cases.

The grave risk of prejudice inherent in this kind of testimony provides further reason why this type of opinion testimony should not be permitted. I disagree with the majority's conclusion that this kind of testimony does not unfairly prejudice the plaintiff. The majority fails to recognize the overwhelming effect on a jury when a patient/litigant's own doctor casts his or her allegiance with the defense and states, in effect, my patient has no case. Jurors are inclined to give great weight to a treating physician's testimony because they recognize the special nature of a physician-patient relationship. Yet expert testimony regarding another physician's standard of care is not based on information gained through this relationship and consequently should not be accorded extra weight. Because the majority's holding fails to recognize and protect the sanctity

of the physician-patient relationship and because it sanctions unfairly prejudicial testimony, I dissent.

## I

Washington's statutory physician-patient privilege provides in relevant part:

> [A] physician or surgeon or osteopathic physician or surgeon shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient . . ..

RCW 5.60.060(4). As the majority correctly notes, "[a]s a statute in derogation of common law, RCW 5.60.060(4) is to be construed strictly, and limited to its purposes". Majority, at 213 (citing *Department of Social & Health Servs. v. Latta*, 92 Wn.2d 812, 819-20, 601 P.2d 520 (1979)). By its very words, the statute is limited in scope to information acquired by a physician, "which was necessary to enable him or her to prescribe or act for the patient". RCW 5.60-.060(4). Yet the majority, ignoring its own analysis, stretches the scope of the statutory privilege to include both factual testimony and opinion testimony, and concludes both were waived in this case. The majority explains:

> We also observe that neither the waiver in RCW 5.60.060(4) nor the order voluntarily entered into by plaintiff in this case distinguishes between fact and opinion evidence. Both fully waive the physician-patient privilege without regard to the type of testimony offered by a treating physician.

Majority, at 215. This analysis is off the mark. The statutory waiver provision provides:

> Ninety days after filing an action for personal injuries or wrongful death, the claimant shall be deemed to waive the physician-patient privilege. Waiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions, subject to such limitations as a court may impose pursuant to court rules.

RCW 5.60.060(4)(b). Like the statutory privilege itself, the statutory waiver does not include expert testimony. Notwithstanding the majority's observations, the plaintiff did

not expressly distinguish between fact and expert testimony because expert testimony does not fall within the scope of the statute. Similarly, the order signed by the plaintiff, permitting interviews with her treating physicians, waives the *physician-patient privilege*. Since there exists no common law right to claim a physician-patient privilege, *Latta*, 92 Wn.2d at 819, the order could only have waived the statutory privilege. And the statutory privilege simply does not apply to the testimony at issue in this case.

But while the statutory privilege does not apply, a physician's fiduciary duty to his or her patient can prevent a doctor from acting adversely to the patient's interests. In *Loudon v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988), we recognized a broad public policy interest in protecting the physician-patient relationship that extends beyond the statutory protection afforded by RCW 5.60.060(4). Faced with the question whether defense counsel may engage in ex parte contacts with a plaintiff's physicians, we explored the nature of the physician-patient relationship after a patient has waived the statutory privilege against confidential communication. Holding that defense counsel is prohibited from engaging in ex parte contacts with a plaintiff's physicians, we explained:

> The mere threat that a physician might engage in private interviews with defense counsel would, for some, have a chilling effect on the physician-patient relationship and hinder further treatment. The relationship between physician and patient is "a fiduciary one of the highest degree . . . involv[ing] every element of trust, confidence and good faith."

*Loudon*, 110 Wn.2d at 679 (quoting *Lockett v. Goodill*, 71 Wn.2d 654, 656, 430 P.2d 589 (1967)). We further found "it difficult to believe that a physician can engage in an *ex parte* conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient." *Loudon*, 110 Wn.2d at 679 (quoting *Petrillo v. Syntex Labs., Inc.*, 148 Ill. App. 3d 581, 595, 499 N.E.2d 952 (1986), *appeal denied*, 113 Ill. 2d 584, *cert. denied sub nom. Tobin v. Petrillo*, 483 U.S. 1007, 97 L. Ed. 2d 738, 107 S. Ct. 3232 (1987)).

*Petrillo v. Syntex Labs., Inc., supra*, cited by this court in *Loudon*, describes the nature of a physician's fiduciary duty:

There is an implied promise, arising when the physician begins treating the patient, that the physician will refrain from engaging in conduct that is inconsistent with the "good faith" required of a fiduciary. The patient should, we believe, be able to trust that the physician will act in the best interests of the patient thereby protecting the sanctity of the physician-patient relationship.

*Petrillo*, 148 Ill. App. 3d at 594.

When a physician is treating a patient who is also a litigant, the physician's fiduciary duty to act in the patient's best medical interest includes a duty to avoid conduct that is adverse to the patient's legal interest. As one Pennsylvania court explains:

We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation.

*Alexander v. Knight*, 197 Pa. Super. 79, 177 A.2d 142, 146 (1962) (per curiam).

Of course, when a patient becomes a party to a lawsuit and puts his or her physical condition in issue, the need to protect the physician-patient relationship must be balanced against the need to obtain information regarding the patient's alleged injuries. In this state, the Legislature has struck this balance by lifting the statutory shield against privileged communication to the extent necessary to obtain relevant information regarding the patient's condition. *See* RCW 5.60.060(4)(b). When the physician-patient privilege is waived, however, our obligation to protect the fiduciary nature of the relationship is not likewise abandoned. It is here that we must be most cautious and confine the treating physician's testimony to that which is pertinent to the patient's prognosis, diagnosis and course of treatment.

In *Loudon*, the unique nature of the physician-patient relationship and its intimate connection to treatment of a patient's condition led this court to place limitations on discovery techniques even after the statutory protection was waived. Similarly, in this case, our duty to preserve the sanctity of the physician-patient relationship requires us to carefully scrutinize the admissibility of adverse opinion evidence offered by a treating physician against his or her patient.

By participating in the defense's case, a treating physician necessarily betrays his or her patient's confidence. To the extent the treating physician's testimony is required to establish the patient's condition, the testimony is a necessary tradeoff between the physician's fiduciary duty to the patient and the duty to further the search for truth in the legal proceeding. But when the physician ceases to be a fact witness and becomes the defense's expert witness on standards of care, the balance shifts. The physician's testimony is no longer an integral component of the fact-finding process, and, instead, becomes part of the defense's litigation strategy.

In *Piller v. Kovarsky*, 194 N.J. Super. 392, 476 A.2d 1279 (1984), a New Jersey Superior Court faced with this question prohibited a treating physician's adverse expert testimony. After recognizing the fiduciary nature of the physician-patient relationship, and distinguishing the situation where the treating physician testifies adversely regarding the plaintiff's condition or course of treatment, the court concluded:

> Defendants argue that a physician volunteering to testify as a defense expert does not in any way damage the essence of the relationship with the patient because the quality of medical treatment is not lessened. But it could not help but have a detrimental effect on the quality of the relationship, and who can say that this would not thereby affect the well-being of the patient.

*Piller*, 194 N.J. Super. at 398.

The court's rationale in *Piller* is strikingly similar to our rationale in *Loudon* for prohibiting ex parte contact with a

patient's treating physician. Certainly the threat that ex parte contact will "have a chilling effect on the physician-patient relationship and hinder further treatment", *Loudon*, 110 Wn.2d at 679, is no greater than the threat that a treating physician's gratuitous adverse testimony will likewise erode the patient's trust and hinder further treatment.

Almost always, and certainly in this case,[3] the defense can find other experts to provide the same testimony being solicited of the plaintiff's treating physician. The defense selects the treating physician precisely because he or she is ethically committed to the patient's best interests and juries are likely to give this fact great weight. Yet, in reality the doctor may well have divided loyalties. "[A] doctor may be persuaded for reasons of professional and economic self-interest to assist the defense". Corboy, Ex Parte *Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient-Litigant's Right to A Fair Trial*, 21 Loy. U. Chi. L.J. 1001, 1022 (1989-1990). Limiting a treating physician's testimony to that which is necessary to establish the contested facts would reduce the incentive and opportunity for a treating physician to breach his or her fiduciary duty.

We must take great care not to exploit the physician-patient relationship. As litigation techniques embrace increasingly aggressive "hardball" tactics, we too must be increasingly vigilant in protecting the rights of litigants in our courts. The potentially devastating effect on a patient's well being by this gratuitous testimony is too high a price to pay for asserting his or her right to a civil remedy. I conclude the fiduciary nature of the relationship should preclude physicians from testifying as expert witnesses on standards of care, at least when alternate testimony is available to the defense.

## II

I reach the same result under an ER 403 analysis. The Court of Appeals correctly recognized that Dr. Duenhoelter's testimony in this case "inevitably present[ed] a high risk of

---

[3]The record suggests that several alternative experts were available.

unfair prejudice". *Carson v. Fine*, 67 Wn. App. 457, 464, 836 P.2d 223 (1992). The "prejudice arises from the fact that plaintiffs will have to answer the argument that 'their own doctor says there is no malpractice' ". *Carson*, 67 Wn. App. at 464-65 (quoting *Piller*, 194 N.J. Super. at 399). Such testimony can wreak havoc with a plaintiff's case and possibly sound its death knell. The prejudicial impact of a treating physician's adverse expert testimony almost always outweighs the probative value of the testimony. Therefore, I agree with the Court of Appeals that an appellate ER 403 evaluation of the potential prejudice inherent in this type of testimony requires on-the-record balancing by the trial court. I would place particular emphasis on whether there is a compelling need for the defense to call this particular doctor and whether there are other experts available. *See Carson*, 67 Wn. App. at 466. Applying these factors to the facts of this case, I find no compelling reason to permit this testimony.

UTTER and BRACHTENBACH, JJ., concur with JOHNSON, J.

Reconsideration denied May 11, 1994.