# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: | DIVISION ONE |
| | No. 79106-1-I |
| RONALD DALE WAFFORD, | UNPUBLISHED OPINION |
| Petitioner. | FILED: March 9, 2020 |

DWYER, J. — Ronald Wafford filed this personal restraint petition challenging his jury conviction for first degree child molestation. He contends that his attorney was constitutionally ineffective for opening the door to the admission of a portion of a video recording of the victim's prior interview with law enforcement, that the trial court erred in admitting testimony regarding Wafford's conduct towards the victim in a swimming pool, and that the cumulative effect of these errors denied him a fair trial. He also argues that the attorney who represented him in his direct appeal was ineffective for failing to raise these claims. Because Wafford has not established an entitlement to relief, we deny the petition.

I

Wafford and his wife Mariyah married in 2002.[1] Mariyah had two daughters from former relationships, H.F. and T.H., who were approximately ten years old and four years old, respectively.

---

[1] We refer to Mariyah Wafford by her first name for clarity.

In 2005, when T.H. was eight years old, she told a peer-aged friend that Wafford had been making her touch his private parts while Mariyah was at the store. H.F. heard about T.H.'s disclosure and told Mariyah. T.H. would not tell Mariyah what had happened, but "kept insisting it's Ron, it's Ron." When Mariyah asked T.H. how many times it had happened, T.H. could not remember, but said that it had happened sometime after the family took a cruise in June of that year. Mariyah reported the disclosure to police and took T.H. to be interviewed by Nova Robinson, a child forensic interview specialist at Dawson Place.

During the interview, T.H. identified areas on a drawing of a child's body that it was "not okay" to touch. She denied that anyone had touched her body inappropriately or had shown her any part of their body. But when Robinson asked T.H., "Has anybody ever asked you to do anything to any parts of their body that it's not okay to be doing things," T.H. paused for a moment and gave a "quite clear affirmative head nod." T.H. said, "I'm not really what it, sure what it's called actually." She then proceeded to disclose that something happened with "Ron" in the garage. She stated that "it started" when she was eight and that it happened approximately 10 times. But she did not identify exactly what had happened. Each time Robinson probed about what had happened, T.H. refused to elaborate further.

> I'm not sure what he made happen cause I don't know what it's called or what it is.
> . . . .
>
> I'm not sure how to explain it but um my sister and my mommy um they could explain it cause they know.

. . . .

> I just don't want to talk about it cause sometimes I just don't feel
> like talking about it.

. . . .

> I keep forgetting cause um, well I don't know why I keep forgetting
> but I just keep forgetting about what happened or how it started.

The State did not investigate further or charge Wafford with any crime.

In 2012, when T.H. was 14 years old, she again told a friend that Wafford had sexually abused her. The friend reported the allegations to police, who interviewed T.H. at school. Upset about the investigation, T.H. told investigators that nothing had happened. No charges were filed.

In 2014, T.H. was 17 years old. She was having problems at home with both Wafford and Mariyah, and frequently skipping school. T.H. started seeing a counselor at school to talk about her anger. Eventually, T.H. disclosed to her counselor that Wafford had sexually abused her. During the ensuing police investigation, T.H.'s older sister, H.F., also made allegations that she had been sexually abused by Wafford.

The State charged Wafford with crimes against both T.H. and H.F. As to T.H., Wafford was charged with first degree rape of a child, first degree child molestation, and first degree incest. As to H.F., Wafford was charged with first degree rape of a child, first degree child molestation, and third degree child molestation.

Prior to trial, the court held a hearing on the admissibility of the video recording of the 2005 interview with T.H. pursuant to RCW 9A.44.120, the child hearsay statute. The court granted Wafford's motion to exclude the video. It

3

noted that RCW 9A.44.120 required a "statement" by a child "describing any act of sexual contact." The court concluded that because T.H. merely nodded her head in response to Robinson's question, she did not make a "statement" describing any sexual contact, and the video was thus inadmissible.

The State noted that it would asked the court to reconsider its ruling if defense counsel sought to have Robinson testify that T.H. had not disclosed any sexual abuse:

> But as it stands – so [defense counsel's] pleadings are replete with assertions that – or – well, assertions that in the initial interview, the one we viewed in Exhibit 1 yesterday, there was no disclosure of – there's no disclosure of any kind. There was no disclosure of sexual abuse.

> I am anticipating, if that is, in fact, her position, questions of some of the State's witnesses about that topic. So in other words, when Ms. Robinson is on the stand, asking her, "Isn't it true that [T.H.] didn't ever disclose any kind of sexual abuse?"

> I understand the Court's ruling with respect to the admissibility of the hearsay evidence, but I want to ensure that the State has an adequate ability to counter that line of questioning with the evidence available to it. So I just want to raise that specter.

> I think that's something we can deal with, should it arise, but I wanted the Court and counsel to kind of be aware of some concern, and I guess I'm flagging for you both the possibility that I might be making another run at some limited introduction of some of the evidence, should that line of questioning develop.

The court informed the parties: "If doors get opened, doors get opened."

During opening statement, defense counsel argued that T.H. falsified the allegations against Wafford because she was angry and did not want to abide by her parents' rules for living in the home. Defense counsel referred explicitly to

the video. She stated that H.F. had denied that Wafford had sexually abused her:

> And [H.F.'s mother] brought both [H.F.] and [T.H.] to Dawson Place in 2005. Nova Robinson interviewed on video [T.H.] and built rapport and made sure she was comfortable and made sure she knew she wasn't in trouble and made all of the things that in her training she's supposed to do to create an environment where, if a crime was happening to a child, that child would feel safe to disclose.
>
> But [T.H.] denied that anything was happening to her. She knew in third grade at age eight what was bad touch, good touch, and she denied that any of those things were happening to her.

The State renewed its request that the court admit the video. The State argued that when defense counsel mentioned the video, she opened the door to its admission. The State contended that the jury was entitled to see the video in order to rebut the characterization that T.H. denied any sexual abuse.

Defense counsel denied that the door had been opened:

> Your Honor, I fully expect [T.H.] in cross-examination to admit, just like she did in my deposition, that she denied being abused in 2005 to Ms. Robinson, and that was the evidence I was alluding to when I was doing my opening statement, that I'm going to be cross-examining [T.H.] and that I expect her to respond to my questions with those facts.
>
> So I don't believe I opened the door to that. This is what she said in her deposition, and this is what she said in 2014 at Dawson Place, and I fully expect her to testify consistently with what she said that, yes, she denied being abused in 2005. So I don't believe any door has been opened.

The court disagreed:

> You referred to the interview. You referred to the video that was made from the interview, and you said that [T.H.] denied anything was happening to her, and you said that twice.

It would be fundamentally unfair to leave it like that. I said the State could not use this item of evidence, and then you told the jury what was inside the evidence. So things have changed, and the door is now open.

The court ruled that the portion of the video "where [T.H.] either denied or didn't deny that something happened" was now admissible. The court stated that no other portion of the video would be admitted.

At trial, the State played the portion of the video admitted by the court, lasting approximately two-and-a-half minutes.[2] The video clip begins with T.H. identifying areas it was "not okay" to touch. In response to Robinson's questions, T.H. denied that anyone had touched her or had showed her parts of their body. But she clearly paused and then nodded when asked if anyone had asked her to do anything to parts of their body. She identified the person as Ron and stated that it happened in the garage. Robinson asked if anyone was ever with her when it happened and T.H. said no. The video clip then ends.

T.H. testified that Wafford began sexually abusing her when she was six years old. She stated that on one occasion, Wafford was tucking her into bed when he laid down next to her and put his hand inside her underwear and touched her vagina. T.H. testified that Wafford began having her perform oral sex on him when she was eight years old. She stated that this happened in the garage and in other locations in the house. T.H. testified that Wafford performed oral sex on her on one occasion sometime after she was 13 or 14 years old, and had sexual intercourse with her on one occasion when she was 17 years old.

---

[2] The parties provided both the full video and the portion shown to the jury for this court's review.

6

During H.F.'s testimony, the State asked if H.F. ever saw anything between Wafford and T.H. that caused her concern. H.F. proceeded to discuss an incident involving a pool in the family's backyard. H.F. testified that she saw T.H. swimming around and underneath Wafford in the pool, and that when Wafford got out of the pool, he appeared to have an erection. H.F. stated that Wafford typically dried off outside, but this time he hid behind a dining chair to dry off. H.F. described Wafford as unusually flustered and talking much more quickly than normal. Wafford objected, arguing the testimony was irrelevant and inadmissible under ER 404(b). The court overruled the objection.

Wafford successfully moved for a directed verdict as to the charges of first degree child molestation and third degree child molestation of H.F. for insufficient evidence. The jury found Wafford guilty of first degree child molestation of T.H., but was unable to reach a verdict on the remaining counts. The jury returned a special verdict stating that the conduct forming the basis for the first degree child molestation conviction was "Ron's hand touching in the area of [T.H.]'s vagina."

In his direct appeal, Wafford argued that the trial court erred in admitting the video clip. He contended that, as a matter of law, comments made by counsel during opening statements cannot open the door to otherwise inadmissible evidence. Wafford also argued that his attorney was ineffective for failing to request a limiting instruction that would allow the jury to consider the video only for the purpose of rebutting defense counsel's characterization of the video in opening statement as a denial of sexual abuse.

7

This court affirmed Wafford's conviction. Wafford filed a timely personal restraint petition.

II

As a preliminary matter, the State contends that Wafford is procedurally barred from renewing a claim of ineffective assistance of counsel made in his direct appeal.

A personal restraint petition may not renew an issue raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). But a petitioner who raises an ineffective assistance of counsel claim on direct appeal is not barred from raising another ineffective assistance of counsel claim based on different grounds in a personal restraint petition. In re Personal Restraint of Khan, 184 Wn.2d 679, 689, 363 P.3d 577 (2015).

The State argues that Wafford's ineffective assistance claim is barred because it involves the same issue raised on direct appeal—defense counsel's handling of the 2005 video. But Wafford argued on direct appeal that defense counsel was ineffective for failing to limit how the jury could consider the video. In contrast, Wafford now argues that defense counsel should not have opened the door to the admission of the video in the first place. He additionally argues that defense counsel should have sought the introduction of the entire video. Neither of these issues were addressed in Wafford's direct appeal, and Wafford is not barred from raising them in a personal restraint petition

Accordingly, we turn to the merits of Wafford's petition.

III

To successfully challenge a judgment by means of a personal restraint petition, a petitioner must establish either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). If a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he or she has necessarily met the burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

IV

Wafford first contends that his attorney was ineffective for opening the door to admission of the video. In the alternative, Wafford argues, having opened the door to its admission, defense counsel was ineffective for allowing the State to play "only the most inculpatory portion of the video." He contends that defense counsel should have sought the admission of the entire video, because it would show the jury that T.H. never described any sexual acts and the only thing that T.H. described as occurring in the garage was playing with playdough while Wafford played a video game.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of trial counsel, a petitioner must demonstrate

both (1) that his attorney's representation was deficient, i.e., that it fell below an objective standard of reasonableness, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failing to satisfy either requirement ends the inquiry. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Davis, 152 Wn.2d at 673. There is a strong presumption that a defendant received effective representation. McFarland, 127 Wn.2d at 336.

Here, to demonstrate prejudice, Wafford must show that there was a "reasonable probability" that the jurors would have acquitted him of first degree child molestation if they had not seen the video clip, or if they had seen the video in its entirety. McFarland, 127 Wn.2d at 335. Wafford fails to do so. According to the jury's special verdict, the conduct forming the basis for the first degree child molestation conviction was when Wafford put his hand inside T.H.'s underwear and touched her vagina while tucking her into bed. The video clip was immaterial to this conviction. In fact, in the video clip, T.H. explicitly denied that anyone had ever touched the private areas of her body. Instead, the conviction was supported by other, unrelated evidence, including Mariyah's

10

recollection of T.H.'s disclosures and T.H.'s own testimony. Wafford fails to establish that he was prejudiced by the portion of the video admitted at trial.

V

Wafford next contends that the trial court erred in allowing H.F. to testify regarding his conduct towards T.H. in the swimming pool. He argues that the testimony should have been excluded as irrelevant.[3]

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Because of the trial court's considerable discretion in the admission of evidence, reversible error occurs only in the exceptional circumstance of manifest abuse of discretion. Carson v. Fine, 123 Wn.2d 206, 226, 867 P.2d 610 (1994). A court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012).

Wafford admits that the testimony would have been relevant had it shown he was "in a state of sexual excitement" around T.H. In fact, the testimony did show this. H.F. testified that she saw Wafford with an erection immediately after getting out of the swimming pool with T.H. H.F. also noticed that Wafford was behaving unusually, including hiding behind a chair and talking quickly. The testimony was relevant to show Wafford's lustful disposition towards T.H.

---

[3] Wafford also claims that the testimony was unduly prejudicial. But Wafford did not object on that ground at trial, thus waiving the claim on appeal. RAP 2.5(a); see also State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (a party may assign error to the appellate court on only the specific ground of evidentiary objection made at trial).

Wafford fails to show that the court abused its discretion by admitting the evidence.

VI

Wafford argues that cumulative error violated his right to a fair trial. Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless. State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). But where, as here, there are few or no errors and the errors, if any, have little or no effect on the outcome of the trial, reversal is not required. Weber, 159 Wn.2d at 279.

Wafford also contends that appellate counsel was ineffective for failing to raise the claims in this petition in his direct appeal. A petitioner claiming he received ineffective assistance of appellate counsel must show that the legal issue that counsel failed to raise had merit and must then show that he was prejudiced by appellate counsel's failure to raise the issue. In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004). Because none of the above claims have merit, Wafford cannot demonstrate that his appellate counsel acted ineffectively by not raising them.

WE CONCUR:

12